MARTHA VAN DORN, APPELLEE, v. WILLARD KIMBALL, APPELLANT.

FILED DECEMBER 19, 1916.   No. 18837.

1. **False Imprisonment:** BELIEF IN GUILT: QUESTION FOR JURY. In an action for false imprisonment, if it appears that the defendant was instrumental in causing the arrest of the plaintiff upon a charge of felony, and that the plaintiff was not in fact guilty of the offense charged, it becomes an important question to be submitted to the jury, if the evidence is conflicting, whether the defendant had sufficient reason to believe and did believe that the plaintiff was guilty.

2. ———: RESPONSIBILITY FOR ARREST: QUESTION FOR JURY. In such case, if the officer who made the arrest in the presence of the defendant made a personal investigation of the fact as to plaintiff's guilt, and then communicated with his superiors before making the arrest, and the evidence is conflicting as to whether the arrest was made wholly upon the officer's responsibility or was caused by the defendant, it is proper to submit that question to the jury with proper instructions.

3. ———: DAMAGES: QUESTION FOR JURY. In such case, the question of the effect of such arrest upon the health or bodily condition of the person arrested is for the jury upon conflicting evidence, and their finding will not be disturbed upon appeal, except so far as the damages allowed, or some part thereof, are clearly unsupported by the evidence.

4. ———: ———: EVIDENCE: HYPOTHETICAL QUESTIONS. The fact that the arrest *might* cause the injury to plaintiff's health complained of is not conclusive that it did so; but it is important to know whether the arrest and the mental strain and worry caused thereby could under ordinary circumstances occasion the troubles which the plaintiff afterwards suffered, if there was other competent evidence tending to prove that, as a matter of fact, the physical troubles of the plaintiff were caused by the arrest and its accompanying circumstances. The use of the word "might" in a hypothetical question to a medical expert is not to be approved; but it would not of itself be considered so prejudicial as to require a reversal.

5. **Trial:** REFUSAL OF INSTRUCTION. The judgment of the trial court will not be reversed because of refusing a requested instruction which assumes the existence of a material fact upon which the evidence is conflicting.

6. ———: INSTRUCTIONS: NECESSITY OF REQUEST. Nor because it appers that a more detailed instruction might have been given upon the question of the responsibility of the defendant for some of the matters complained of, when no further instruction was requested by the defendant which would have been suitable under the circumstances.

7. Instructions complained of are found not to be so inconsistent as to require a reversal.

8. Evidence: HYPOTHETICAL QUESTIONS. If the evidence is conflicting as to a material matter, the hypothetical question asked the expert witness is not objectional because it recites such matter as a basis for his opinion. It is for the jury to determine whether such an hypothesis is warranted by the evidence.

9. Trial: DAMAGES: PREJUDICE. The fact that the jury errs in its judgment of the amount of plaintiff's damages is not such conclusive evidence of prejudice as to admit of no other conclusion.

APPEAL from the district court for Lancaster county: ALBERT J. CORNISH, JUDGE. *Affirmed on condition.*

*Burkett, Wilson & Brown* and *Ralph P. Wilson,* for appellant.

*Claude S. Wilson* and *Homer L. Kyle, contra.*

SEDGWICK, J.

The defendant complained to the police officers that this plaintiff had in her possession some property in which the defendant was interested, and a policeman was sent with the defendant to search for the property. They went to the house where the plaintiff was living, and there found some property that did not belong to the plaintiff and in which the defendant was interested, and the police officer required the plaintiff to accompany him to the station, which she did, and remained there for some time, and was allowed to go upon her promise to return the next morning. She returned the next morning, and after some examination was allowed to go home, with the statement by the officer that she need not return until she was called for. She began this action in the district court for Lancaster

county against the defendant to recover damages for an alleged false arrest. On the trial the jury found a verdict in her favor for $10,000 damages. The trial court required her to remit one-half thereof, which she did, and judgment was entered in her favor for $5,000, from which the defendant has appealed.

The plaintiff was conducting a rooming house, called in the record the "Q street house," and was or had been interested in another rooming house called the "R street house," which was under the direct management of a Miss Shockey. In this house the bed linen and some of the furniture and other articles were the property of Miss Shockey and were also leased by the defendant. Miss Shockey informed the defendant that some of her property in the R street house, consisting mostly of bed furnishings, had disappeared, and that she believed the plaintiff had taken them and had them in her Q street house where she lived. Upon this information, and perhaps other facts within his knowledge, the defendant complained to the police officers. The officers testified that the defendant suggested that the plaintiff should be arrested, and that they informed the defendant that they would not arrest the plaintiff upon the information given them by the defendant without a complaint and warrant. The officers suggested that they would send a policeman with the defendant and, unless the plaintiff objected to their searching her house, they might make such search for the missing articles. Thereupon the next day a policeman, Mr. Sides, was sent to the defendant's place of business, and he and defendant, taking with them Miss Shockey to identify the articles if found, went to the plaintiff's residence, and, she making no objection, they made a search of the house and found a considerable quantity of bed linen and other articles which they identified, and were conceded by the plaintiff, to be the property of Miss Shockey, in which the defendant was interested. The value of these articles so identified is variously estimated by

the defendant's witnesses at from $50 to $100. According to the plaintiff's evidence, the value is very much less. The plaintiff, through some contract between herself and the defendant, was or had been interested in the management of the R street rooming house, and the employees of the laundry where the washing for these two rooming houses was done testified that they supposed that the furnishings for both houses belonged to the plaintiff, and that it was immaterial to which house they were returned, and that articles were frequently received by them from one of the houses and returned to the other house. The plaintiff testified that she did not have the immediate care of the rooms and bedding in her house, that she had a housekeeper and help to attend to these matters, and that she was not aware that the articles had been so exchanged; and the evidence shows that at least some of the articles of the plaintiff, that were taken from the house that she occupied, were found immediately after she was arrested in the R street house where Miss Shockey resided.

The evidence wholly fails to prove that the plaintiff had committed any crime requiring her arrest and punishment. In this condition of the evidence, some of the important questions for the jury were whether the defendant, when he complained to the police officers, had sufficient reason to believe and did believe that the property belonging to Miss Shockey, in which he was interested, had been purposely taken by the plaintiff into her possession with the intention to feloniously convert it to the plaintiff's own use, and whether, acting upon that belief, he went to the plaintiff's residence with the police officer for the purpose of ascertaining the facts.

The defendant first appealed to the chief of police and requested that the plaintiff be arrested for the offense which he appears to have stated that she had committed. The police officer refused to arrest the plaintiff without a complaint and warrant, and the de-

fendant declined to make a complaint. Afterwards the chief of police decided to send an officer with the defendant to make investigations, and the officer, with the help of the defendant and Miss Shockey, made investigation, and thereupon the police officer called up the police headquarters by telephone, and after this conversation over the telephone the officer announced that the plaintiff would be arrested. One of the important questions of the case was whether the officer determined upon this arrest from what he had himself observed and instructions from headquarters independently of any wrongful act on the part of the defendant, or whether the arrest was brought about by the unjustified statements of the defendant. The evidence is not conclusive upon this point, but is of such a nature as to require it to be submitted to the jury.

There is some language in the petition that might lead one to think that the plaintiff was seeking to recover for slander for false statements made in regard to her character, but that question was entirely eliminated by the court. The case was submitted to the jury entirely upon the theory that the action was for unlawful arrest and imprisonment, and the jury by instruction were not allowed to consider any damages except those resulting directly from the arrest and imprisonment.

The defendant insists that the court erred in allowing answers to a hypothetical question. Dr. Walker had testified to the physical condition of the plaintiff, showing that the plaintiff had suffered considerably physically, and was then asked this question: "Assuming that prior to June 12 of that same year, five days prior to your examination of her, Mrs. Van Dorn was a strong, well woman, and assuming between the 12th day of June of that year and the 17th day, when you examined her, that she had undergone a severe mental strain by being arrested and confined in the police station of the city, state whether or not, under those conditions of mental worry

and strain, that *might* be the controlling feature of
this trouble?" The defendant objected to this question prin-
cipally on the ground that it was too indefinite; that it re-
cites that the plaintiff "suffered a severe mental strain."
The question was amended on the suggestion of the court
by adding, "That she was confined in the police station,
although not placed in a cell and not taken in the patrol
wagon, but by an officer accompanying her through the
streets of the city of Lincoln," and "I will also add,
no handcuffs being placed on the prisoner, nor her body
not touched except by the officer who assisted her at
times when she appeared weak and needing his assist-
ance," and "now, assuming this state of facts, what in
your opinion, or what would you say in your opinion
whether that might be the controlling features that
caused the condition in which you found her on the
17th day of June, 1912?" The objection to the question
was overruled, and the witness answered, "Well, it
might."

The principal objection to this question discussed
in the brief is that it required the witness to answer
whether the arrest complained of might have caused
the physical condition which the witness saw. Of
course, the fact that the arrest *might* have caused that
condition would not be at all conclusive. The question
for the jury is whether it in fact did cause it; but it
is important to know whether the arrest and the mental
strain and worry caused thereby could under ordinary
circumstances occasion the troubles which the plaintiff
afterwards suffered, if there was other competent evi-
dence tending to prove that as a matter of fact the
physical troubles of the plaintiff were caused by the
arrest and its accompanying circumstances. The form
of the question in this respect is not to be approved,
but it would not ordinarily of itself be considered nec-
essarily so prejudicial as to require a reversal.

The defendant assumes that the only evidence in the
record tending to show that the plaintiff's condition

as found by the physician was the result of the arrest was this evidence of Dr. Walker's that such arrest might have caused the condition. Of course, as already observed, such evidence of itself would not be sufficient; but it appears from the evidence of the police officer and others there, without contradiction, that, when the officer first informed the plaintiff that she would have to go to the police station, the plaintiff fainted and fell to the floor and remained unconscious for several minutes. The evidence also shows that before the arrest the plaintiff uniformly enjoyed good health, and that from the time of the arrest for several weeks she was in the condition described by the physician. While the evidence is not conclusive that this condition of the plaintiff was caused by the arrest, it was sufficient to require that question to be submitted to the jury.

The defendant complains of various instructions given by the court, and also of the refusal to give instructions requested by the defendant. The court instructed the jury: "If you should find from the evidence and under these instructions that the defendant did cause the arrest of the plaintiff, he would be liable for only such damages as resulted directly from such arrest, and would not be liable for damages that were not the usual or ordinary result of such an arrest, nor for such damages as could not have been anticipated by the defendant." There was some evidence tending to show that the plaintiff, after she was arrested, stated that she would have to change her clothes before she went with the officer, and that she was not allowed to go into another room to change her clothes, but was compelled to do so in the presence of the officer and others. This evidence was contradicted by several witnesses. The defendant insists that he was not present when this took place and had nothing whatever to do with that transaction, and that the court did not fully present this question to the jury in the instruction above quoted, and that the court erred in refusing to give the instruction upon that

point requested by the defendant, which was as follows: "You are instructed that, even though you should find from the evidence that the defendant requested the officers to arrest the plaintiff, this would not make the defendant liable for any acts done or indignities offered the plaintiff by the policeman after the arrest took place; there being no evidence that he either directed, requested, or ratified such alleged indignities." The requested instruction would tell the jury that there was "no evidence that he either directed, requested, or ratified such alleged indignities." The great preponderance of the evidence is that the defendant was not present when the plaintiff changed her clothing, and that he was not in any way connected with that transaction, and, if that was the only indignity offered to the plaintiff, the instruction requested by the defendant would no doubt have been given. There is, however, evidence of other indignities offered the plaintiff, and this evidence is strongly supported by the testimony of the police officer. The defendant accused the plaintiff of stealing, not only the articles for which they were searching, but other articles, such as a basket and bedstead, and enforced his charges with violent gestures toward the plaintiff. It would not have been proper for the court to have told the jury, under the evidence in this case, that the defendant did not direct, request, or ratify any indignities offered to the plaintiff. The court told the jury that the defendant "would be liable for only such damages as resulted directly from such arrest, and would not be liable for damages that were not the usual or ordinary result of such an arrest." The case is a difficult one and pre-eminently in its facts is a case for the consideration of the jury.

A large volume of evidence was taken, and many questions of law and practice were raised and determined by the court. The instructions were comprehensive, were clear and apparently fair, and in the main disposed of the many legal questions in the case in a

satisfactory manner. Perhaps a more detailed instruction might have been given upon the question of the responsibility of the defendant for some of the matters complained of, but no further instruction was requested by the defendant which would have been suitable under the circumstances.

The defendant complains that two of the instructions given by the court were inconsistent. In one of these instructions the court said: "When a person in good faith, acting as a reasonable and cautious man under the circumstances, upon information which he has received, believes that property of his own or of another in which he is interested has been stolen, he has a right to inform the police of the fact, and of his belief so formed, and, if in doing so he acts without any malice or sinister motives, he is not responsible for any arrest which may follow made by the police authorities acting upon their own volition, although based in whole or in part upon the information that he may have given such police authorities." It is conceded that this is a proper instruction, but the court also told the jury: "If the plaintiff was innocent of the theft charged against her, she should not have been arrested and detained, as shown by the evidence." This last instruction might have been made more explicit, but we cannot see that it is inconsistent with the other instructions. It will not be denied that, as an abstract proposition, an innocent person should not be arrested, and that statement is not inconsistent with the statement that, although the plaintiff was improperly arrested, the defendant would not be liable for such an arrest under the conditions recited in the former instruction.

The defendant also complains that, in submitting to the jury as to whether the defendant had a reasonable or probable cause to believe that a crime had been committed, the court refused proper instructions tendered by the defendant. It is insisted that, as probable cause is a question of law and fact, the court should have

fully told the jury specifically what facts would constitute probable cause, and the failure to do so, and at the same time refusing instructions requested by the defendant, was prejudicial error.   In this connection it is complained that the hypothetical question asked the physician assumed that the plaintiff had undergone a severe mental strain, and the defendant insists that that fact nowhere appears in the record.   We cannot agree with the defendant upon that point.   If the jury found that the plaintiff, when she was informed of her arrest, fainted and fell to the floor, that fact and others appearing in the record might have justified the jury in deciding that the plaintiff had undergone severe mental strain.   The plaintiff objected to riding in the patrol wagon and was not compelled to do so.   She walked with the police officer three or four blocks to the police station, and was not confined in a cell, but remained in a waiting room.   She was allowed to go home, and was required to return to the police station the next day, which she did, and after an hour or two was allowed to go until called for.   It is said in the brief: "Such an experience might, in some persons, cause a great mental strain; in others, it certainly would have no such effect, and the court cannot assume, without any evidence whatever, that the plaintiff belongs to one class or to the other."   Of course, it is not a trifling matter to arrest a woman of good character upon a charge of grand larceny and restrain her for hours where criminals congregate.   From the evidence above quoted the jury might find that it quite seriously affected the plaintiff.

It is insisted that the fact that the jury upon this evidence returned a verdict for $10,000 damages is of itself enough to show that the jury generally was ruled by passion and prejudice.   The trial court found that the damages were exaggerated by the jury and required the plaintiff to remit one-half of the verdict, and this, it is said, shows that the trial court considered

that the jury acted from prejudice. The task of estimating damages in such a case is a difficult one. There is no exact rule by which damages can be computed. Different minds might come to different conclusions. The theory of the law is that ordinarily a jury is more competent than the court to estimate such damages. When it is clear that the damages allowed by the jury cannot be supported by the evidence, the court will require a remittitur. The fact that a juror errs in his judgment is not such conclusive evidence of prejudice as to admit of no other conclusion.

The brief is a thorough discussion of the case and suggests some other minor points of objection to the judgment, but we think they are not of such a nature as to require an extensive discussion, in view of the unusual length of this opinion. Some of the questions presented are not free from difficulty; but, on the whole, we cannot say that there is any such prejudicial error in this record as to require a reversal, except in the amount of the verdict.

The principal allegations of indignities and ill treatment which the defendant caused the plaintiff to suffer are not supported by the evidence. The jury must have been misled in considering these allegations which led to a verdict for a larger amount than the evidence will warrant. The evidence will not justify a verdict for more than $3,000.

The judgment of the district court is therefore reversed, unless the plaintiff enter a remittitur for $2,000 from the judgment. If such remittitur is entered within 30 days, the judgment will be.

AFFIRMED.