WILLARD A. PRINCE ET AL., APPELLEES, V. PATHFINDER LIFE INSURANCE COMPANY, APPELLANT.

276 N. W. 661

FILED DECEMBER 17, 1937. No. 30122.

*William H. Wright, Ray M. Higgins* and *Stevens & Stevens,* for appellant.

*B. J. Cunnningham* and *Prince & Prince, contra.*

Heard before GOSS, C. J., ROSE, EBERLY, DAY, CARTER and MESSMORE, JJ., and TEWELL, District Judge.

MESSMORE, J.

This is an appeal from the district court for Hall county, Nebraska, wherein the jury returned a verdict for the plaintiffs below in the sum of $8,524, for legal services and expenses, from which verdict and judgment thereon the defendant appealed to this court on two items: First, for services in aiding the reorganization of the defendant company, and, second, for legal services in the case of William Ritchie and others against Pathfinder Life Insurance Company, total amount of which is $5,000. The fees for other services rendered by the plaintiffs, in the amount of $3,524, are not a part of this appeal.

The plaintiffs' amended petition alleges services performed in the reorganization of defendant company, and for legal services in the case of William Ritchie and others against the company; that the plaintiffs are and have been

for a number of years practicing attorneys in the city of Grand Island, Nebraska; that defendant is a mutual legal reserve life insurance company; that its principal place of business is at Grand Island; that it has a membership of over 4,000 and assets in excess of $1,362,000; that on February 5, 1935, the company was involved in litigation in an action brought in the district court for Hall county by one William Ritchie and others, claiming to be members of the company, in which charges were made against directors and officers of the company for their conduct of the affairs of the company, particularly in regard to a proposed change in the nature of the company from a mutual reserve life insurance company to a joint stock company; that on February 10, 1935, a supplemental petition was filed, in which the officers of the company were charged with malfeasance and misfeasance in handling the affairs of the company; that on February 11, 1935, one Joseph Carl McReynolds filed a petition in intervention and asked for the appointment of a receiver; that the director of insurance for the state of Nebraska threatened to take over the company and place it in the hands of a receiver; that on or about April 1, 1935, while said litigation was pending, the plaintiffs were employed as counsel for the company. The evidence as to their services will be hereinafter covered. The answer is a general denial and admits the appointment of the plaintiffs as attorneys for the company, and that Conn Moose was director of insurance for the state of Nebraska.

The evidence reflects the following: D. O. Beckmann, clerk of the district court for Hall county, identified several exhibits in the case of Ritchie against the defendant company and the pleadings filed by the defendant company in such case. W. A. Prince, one of the plaintiffs, testified that he was 72 years of age, was admitted to the practice in 1888; practiced at Grand Island, and enumerated the different courts in which he practiced. He first contacted the defendant company between the 10th and 15th of April, 1935, when he was interviewed by Mr. Pletcher, then presi-

dent of the company, by Mr. Pope and one or two other directors, in which interview they suggested that the company was involved in litigation. A resolution was passed by the directors of the defendant for the employment of plaintiffs as attorneys on April 23, 1935, and the witness stated he desired to take full control and responsibility in the litigation against defendant. At that time there were five attorneys employed by defendant, and the general counsel for the company was not in a position to represent it, but did counsel with the plaintiffs. Plaintiffs immediately started to assist in the reorganization of the company. It was deemed necessary to have a new president of the company, and the name of David Kaufmann was suggested. Plaintiff W. A. Prince met with Mr. Kaufmann several times, in an attempt to persuade him to accept the presidency of the company; also counseled with the president of the Grand Island chamber of commerce who was a partner of Mr. Kaufmann, and with the director of insurance. Mr. Moose was demanding the resignation of the directors and president of defendant company, and insisting upon a reorganization, as was also Mr. Ritchie, who brought the suit in his own behalf and for several members of the company, for a restraining order and an injunction, the purpose of which was to prohibit the company from changing from a mutual legal reserve life company to a joint stock company. By such action Ritchie forced the return of the sum of $207,000 used by the company in the purchase of the National Old Line Insurance Company of Kansas, and the return of $5,000 attorney's fee, paid to an attorney in Omaha, but the action was not dismissed. Mr. Ritchie objected strenuously to the old directors and president carrying on, and had previously submitted some names for directors and president. Mr. Kaufmann was acceptable to him.

During the progress of the Ritchie litigation and before the reorganization, the company was losing greatly in its membership and had lost approximately 1,000 members. Mr. W. A. Prince persuaded Mr. Kaufmann to accept the

presidency of the company and assured him of his cooperation in meeting the demands made by Mr. Kaufmann before he would accept. He persuaded Mr. Pletcher, former president of the company, to resign, and prevailed upon Mr. Moose, director of insurance, who was threatening to place the company in the hands of a receiver, and threatening to persuade the attorney general to take over the company, to wait for a period of five days to enable plaintiffs to prepare a plan to present for the reorganization of the company. The plan was presented and finally accepted. It embodied the resignation of certain directors, the dismissal of the Ritchie case, certain legal services to be rendered in what is known as the Stapleton case, and a waiver of liability as to certain directors, who resigned, and retention of certain experienced directors. In the Ritchie case a brief was prepared by the plaintiffs, presented to the trial court, together with an answer, requesting that those desiring to intervene be limited as to time. The purpose of the answer was to prohibit a multiplicity of suits, presumably by certain attorneys, who might file claims against defendant for services rendered. Certain motions were also filed in the Ritchie case, and finally a dismissal of such action was had.

The appellant by its testimony endeavors to minimize the value of the services of the plaintiffs, so far as the Ritchie case is concerned, in that all the necessary work had been performed by Mr. Ritchie and his associates to complete the objective sought for in said litigation, contending that meetings had been had by Mr. Ritchie and others with the director of insurance, relative to the resignation of certain directors and the president of defendant company. The Ritchie case had developed to the point where a restraining order had been issued, the case continued, and an adjudication thereof had, so far as the purchase of the Kansas insurance company and the recovery of certain fees, paid to attorneys in that matter, were concerned. However, the case was not dismissed. The appellant contends that the only duty for the plaintiffs to per-

form in the Ritchie case was to see that the action was dismissed.

The appellant contends that the court erred in overruling defendant's objection to a hypothetical question, propounded to N. P. McDonald, L. B. Stiner and James M. Lanigan, attorneys, who testified to the value of services rendered by the plaintiffs and gave their opinion, as experts, of the reasonable amount of fees that should be allowed for such services. The hypothetical question covers many pages in the record, details extensively the services alleged to have been rendered by the plaintiffs, and will not be repeated herein except for parts thereof which the appellant contends are erroneous.

Appellant contends, first, that the hypothetical question erroneously conveyed the impression that plaintiffs were responsible for the adjustment of all of the matters pertaining to the Ritchie case, for the reason that the evidence showed that the plaintiffs were not employed by the company or by any one in connection with the transaction until the Ritchie case had arrived at a point where the one remaining thing to be done was to dismiss it; second, that the hypothetical question stated that the plaintiffs were employed on April 9, 1935, and that they had familiarized themselves with certain pleadings and had worked on the Ritchie case continuously from April 9, 1935, to April 29, 1935, whereas the evidence showed that plaintiffs were first employed on April 9 by one Frank Pope, a director of the company, personally, for investigation of the rights of Mr. Pope and his liability; that the plaintiffs' employment was first discussed on April 13, 1935, and the employment by resolution was had on April 23, 1935; and, third, that the hypothetical question assumed that plaintiffs were exclusively responsible for the selection of Mr. Kaufmann, president of the company, and the directors, and for the resignation of certain officers and directors, whereas, in fact, Ritchie and other plaintiffs in the Ritchie case, cooperating with the defendant company, had or received the agreement to resign of all the officers, and had selected

David Kaufmann as president and the new members on the board in place of the officers removed.

The evidence reflects that Mr. Prince, senior, did talk with certain directors of the company on or about the 13th of April, 1935, desired to take over exclusive control of the litigation in question if employed by the company, and that it was agreed that a formal resolution to this effect would be passed, which was done on April 23, 1935. The evidence further reflects that W. A. Prince and David Kaufmann were personal friends; that the company was involved in serious litigation at the time of plaintiffs' employment. Several conferences were had with the president of the chamber of commerce, with Mr. Kaufmann, with the attorneys interested in such litigation, and the evidence further reflects that Mr. Prince in no instance took credit for anything further in the Ritchie suit than as contended for by defendant, except that he did insist that he performed services of value to the defendant, a local company with which he was thoroughly familiar, knew most of the parties and was acquainted with the conditions to such an extent that his services were of value. The record does not disclose that Mr. Prince represented Mr. Pope, a director, and it is shown by the evidence that he did go over the pleadings, the petition of the plaintiffs in the Ritchie case, the supplemental petition, and all other pleadings incident to said case when such were called to his attention by Mr. Pope. Mr. Prince furnished and presented the plan as contended for by him and had it accepted, which plan stabilized the company and satisfied all concerned. He made no statement that he had anything to do with the Ritchie case, so far as the return of the $207,000 and the 5,000-dollar attorney's fees were concerned, and, obviously, such part of the hypothetical question was for the purpose of showing the nature of the litigation still pending. The company was solvent; even so, the conditions, as they existed at the time of plaintiffs' employment, could still place the company in a chaotic condition where the appointment of a receiver would be necessary, and it must

be admitted that at that time the director of insurance was still making demands for the resignation of the officers and directors of the company, as were Mr. Ritchie and others.

The value of plaintiffs' services was a question for the jury. The testimony of the plaintiffs and of the expert witnesses in this regard fixed the minimum and maximum fee for all services rendered from $8,500 to $15,000. The two items for which the plaintiffs seek recovery are so closely connected that to separate them and make a distinct charge for each item would be difficult. The services should be considered in their entirety, so far as the Ritchie case and the reorganization of the defendant are concerned, because each is a part of the other.

In *Ward v. Aetna Life Ins. Co.*, 82 Neb. 499, 118 N. W. 70, it was held: "Error is not committed in permitting a hypothetical question which fairly reflects the case as made by the plaintiff because other facts afterwards established by the defendant's evidence are not included in the question." And in *Malcolm v. Evangelical Lutheran Hospital Ass'n*, 107 Neb. 101, 185 N. W. 330, it was held: "It is sufficient in propounding a hypothetical question to limit the question to the statement of facts containing the idea upon which the evidence is elicited or brought out."

"If the evidence is conflicting as to a material matter, the hypothetical question asked the expert witness is not objectionable because it recites such matter as a basis for his opinion. It is for the jury to determine whether such an hypothesis is warranted by the evidence." *Van Dorn v. Kimball*, 100 Neb. 590, 160 N. W. 953.

"Hypothetical questions propounded to an expert, if so framed as to fairly and reasonably reflect the facts proved by any of the witnesses in the case, will be sufficient, provided the subject is one proper for expert testimony." *Landis & Schick v. Watts*, 82 Neb. 359, 117 N. W. 705.

The hypothetical question in the instant case examined and found to fairly reflect the facts either admitted or proved by the witnesses, and to contain substantially the undisputed pertinent facts in the case.

The appellant further contends that the verdict is excessive, is not supported by the evidence, and is contrary to law.

"In próving the reasonable value of an attorney's services it is not absolutely necessary that the evidence of expert witnesses should be given. The fact may be sufficiently established by the evidence of other witnesses, and by the circumstances of the case." Annotation, 20 Am. & Eng. Ann. Cases, p. 55, and cases therein cited.

"It is well settled that the opinion evidence of expert witnesses, as to the value of an attorney's services, is not conclusive; nor is it binding either on the court or on the jury. But such evidence is to be taken into consideration, with all the other evidence in the case, in arriving at a conclusion as to the just value of the services performed." Annotation, 20 Am. & Eng. Ann. Cases, p. 56, and cases cited therein.

"The importance of a cause to a client is worthy of consideration in determining the value of the professional services of the attorney employed therein." *Selover v. Bryant,* 54 Minn. 434, 56 N. W. 58.

In *Babbitt v. Bumpus,* 73 Mich. 331, 41 N. W. 417, it was held: "In a suit by an attorney to recover the value of his services, he may show by his own testimony his experience and knowledge, and give his judgment as to such value."

In determining the value of attorney's fees, the following elements should be considered: The importance and result of the case; the difficulties thereof; the degree of professional skill, diligence and ability required and exercised; the experience and professional standing of the attorney, and the prominence and character of the parties where they affect the importance of the litigation; the questions of law raised, and the time and labor necessarily required in the performance of duties. See 5 Am. Jur. 379, sec. 198; *In re Estate of Rhea,* 126 Neb. 571, 253 N. W. 876; 6 C. J. 760.

In *Dworak v. Shire,* 126 Neb. 474, 253 N. W. 655, it was held: "In a law action, where the evidence is in substantial conflict, the decision of fact is for the jury."

We believe that the jury had full opportunity to weigh the evidence in this case, to determine the reasonable value of the services rendered, and, as constitutional triers of fact, found for the plaintiffs in the amount asked for, and that subsequently the district court had the opportunity, on the motion for a new trial, to determine whether the value of the services was excessive and whether a remittitur should be required. Other assignments of error are without merit.

For the reasons given in this opinion, the judgment of the district court is hereby

AFFIRMED.