LINNA T. APFEL, APPELLEE, V. GENERAL AMERICAN LIFE INSURANCE COMPANY, APPELLANT.

278 N. W. 884

FILED APRIL 1, 1938. No. 30252.

*Loren H. Laughlin, Allen May* and *J. R. Burcham,* for appellant.

*Baylor, Tou Velle & Healey, contra.*

Heard before GOSS, C. J., ROSE, DAY, PAINE, CARTER and MESSMORE, JJ.

PAINE, J.

This is an action to recover death benefits upon a paid-up policy of life insurance. Defendant claimed the policy had lapsed. Plaintiff moved for judgment upon the pleadings. The court after arguments entered judgment for $1,325.59, with interest from September 19, 1936, and costs, including an attorney's fee of $250.

It is understood that the motion for judgment on the pleadings admitted the truth of all well-pleaded facts in the answer, together with all fair inferences to be drawn

therefrom, and the court, in passing upon such motion, assumed the truth of the allegations in both pleadings.

The defendant, in assigning errors, insists that the judgment is not supported by the pleadings, is contrary to law, and fails to give full faith and credit to the decree of the circuit court of the city of St. Louis approving the purchase agreement of the assets of the Missouri State Life Insurance Company by the General American Life Insurance Company, entered September 7, 1933; also insists that the court erred in taxing attorney's fees of $250 as grossly excessive, being about 18 per cent. of the amount involved, and involving but a half-day in court, and insists that the motion to retax attorney's fees should have been sustained by the court.

This policy was issued by the Missouri State Life Insurance Company on July 29, 1932, for $2,000, and it was originally issued as a paid-up policy, no additional premiums to be charged thereon at any time. The insured obtained a policy loan thereon in the sum of $600. In August, 1933, the Missouri State Life Insurance Company became insolvent, and the superintendent of insurance found that the assets would not warrant the company in continuing business, and the court authorized him to sell and dispose of all the assets of said company.

An entirely new company, the General American Life Insurance Company, purchased all of the assets, and issued its certificate of assumption under date of September 7, 1933, by which it assumed and agreed, among other things, to carry out the obligations of the policy therein described. If a policyholder did not care to continue his policy in the new organization, he could go into the court before which the matter was pending, surrender his policy, and receive a certain amount in cash. If he desired to continue his policy in force, the decree of the court provided for a lien to be set up against each of the old policies issued by the former company. As the parties do not agree on the effect of this lien, we are required to examine it with some care. Plaintiff's deceased was notified that there was

a lien outstanding against his policy as against all others. This lien was computed at 50 per cent. of the reserve of the policy as of September 1, 1933. It is stated in section 19 of exhibit D that this lien can never be increased above the initial amount, "nor above any amount to which it may have been reduced by any distribution," and section 17 states that the lien bears interest at the rate of 5 per cent., payable at the end of the policy year. After the fifteenth year, if all liens have not been discharged, the rate will be reduced to 4 per cent. In section 18 it is stated that every dollar of interest paid on the liens goes to the old policyholder's account, and increases the earnings used for his benefit. It is further stated in section 30 that it is expected that the liens may be entirely eliminated within the period of 15 years, the same being extinguished out of recovery in values and earnings on the business.

We have gone into detail in regard to this rather elusive "lien" arbitrarily taxed up against outstanding policies, which it was hoped would be wiped out by the earnings of the company within 15 years, for the reason that this lien offers the difficulty of arriving at a decision of the case. The defendant insists that this policy had outstanding against it on July 5, 1936, a loan of $600, with interest to that date of $35.78; that it had the lien charged up against this policy of $541.30, and that the interest on this lien at 5 per cent. to July 5, 1936, amounted to $25.29, making a total indebtedness charged against the policy on that day of $1,202.37, and that at the same moment the cash surrender value of this paid-up policy was $1,202.42, leaving a credit of five cents due to the policyholder, and thereupon on said date a notice was sent out to the policyholder, stating that he owed interest of $2.48, and who he should pay it to, and it stated on the back of said notice that, inasmuch as the indebtedness of the policy equals the available cash value, the policy has lapsed, and will be void in accordance with its terms, unless the interest thereon is paid within the period stated in the preceding paragraph.

The plaintiff insists that the only debt against this policy was $600, with the interest thereon; that the lien which the company arbitrarily charged against the policy was not an indebtedness in any sense against the policy; that by its very terms the interest upon this lien was not due until July 29, 1936, the anniversary date of the policy, and no part of that interest could be demanded or collected on July 5; and it was further provided that if the insured died before September 1, 1948, the lien charged up against the policy was not to be deducted, but should be waived in the payment of the death claim, and the insured died in 1936, and, therefore, the lien itself could not be deducted from his policy.

This lien seems to occur first in the purchase agreement, a photostatic copy of which is attached to the petition as exhibit B, and it is set out in section (c), art. II thereof, that the appraised value of the assets purchased is less than the required legal reserves. Therefore, a lien equal to 50 per cent. of the terminal reserve on each policy has been established in the accounts of the old company, and such lien and its accumulation shall be carried as an asset by the new company,—a rather unique arrangement.

In article VII appear the provisions covering the reduction and repayment of such liens. It provides that the new company will apply the net earnings of the old company to the reduction and repayment of such liens against all the policies; that such accounting shall take place on various fixed dates, and that the new company shall continue to apply all such net earnings to the gradual reduction and repayment of such liens until such time as the sum so applied shall be equal to and cancel the entire amount of the original lien.

The defendant cites the case of *Kittles v. General American Life Ins. Co.*, 182 S. Car. 162, 188 S. E. 784, which states that the arrangement in reference to these policy liens was definite and clear.

Now, with all due respect to that South Carolina decision, we have reached a different conclusion.

The assets of the old company were arbitrarily charged down, or off, to leave a deficit of 50 per cent. of the reserve on each policy, according to the books of the old company, which had ceased to function otherwise. However, each policy was entitled to its share of the earnings, which were constantly being recovered by skilful handling of these assets.

This lien was not a definite sum, but was an amount which would fluctuate with earnings secured from the assets of the old company. There was not a definite actual liability to pay a certain definite sum of money on July 5, 1936, or any other date except on accounting dates, and this paid-up policy could not in law or equity be arbitrarily canceled as of that date for failure to pay $2.48 interest, which date in any event was not the correct interest payment date.

On May 4, 1937, the trial court entered judgment on the pleadings in the sum of $1,325.59, with interest at 6 per cent. and attorney's fee in the sum of $250. Objections to the amount of this fee are set out at length in the brief, and it is insisted this court has held that 10 per cent. of the judgment recovered is a fair fee. *Rathbun v. Globe Indemnity Co.*, 107 Neb. 18, 184 N. W. 903. The plaintiff cites two cases in support thereof: *Hemmer v. Metropolitan Life Ins. Co.*, 133 Neb. 470, 276 N. W. 153; *Prince v. Pathfinder Life Ins. Co.*, 133 Neb. 705, 276 N. W. 661.

The transcript shows that some 46 pages are taken up with the petition and answer, and, in addition, a large number of printed exhibits are attached, the proceedings in the circuit court of St. Louis alone being a booklet of some 54 pages. Doubtless the trial court is as good a judge of the reasonableness of the fees for the services rendered in its court as any one, and he saw fit to fix the fees at more than the usual fee of 10 per cent.

An attorney's fee in actions on insurance policies must always be reasonable in amount. In many cases it cannot be based solely on the amount of the judgment, but should only be fixed after examining the type of questions in-

volved, the length of time, diligence, and skill necessarily devoted to the preparation and presentation of the matters involved.

After an examination of the entire record in this case, we have found no reversible error, and affirm the judgment entered by the lower court, and tax an additional attorney's fee of $50 in this court.

AFFIRMED.