GEORGE W. ALLEN ET AL., APPELLEES, v. CITY OF OMAHA, APPELLANT: DAN B. BUTLER ET AL., INTERVENERS, APPELLANTS.

286 N. W. 916

FILED JULY 11, 1939. No. 30545.

*Seymour L. Smith, Harold C. Linahan, W. W. Wenstrand* and *Louis T. Carnazzo,* for appellants.

*McKenzie & Dugan, Williams, Beynon & Nye* and *Francis V. Robinson, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER and MESSMORE, JJ.

CARTER, J.

This is an action against the city of Omaha to recover the amounts due the police relief and pension fund of the city under the provisions of section 14-610, Comp. St. 1929.

The action was commenced by three retired police officers now on pension as beneficiaries of the fund. A petition in intervention was filed by the members of the city council in their capacity as trustees of the police relief and pension fund. The trial court entered a judgment against the city for $466,058.84, allowed an attorneys' fee of $46,605.88, and dismissed the petition in intervention. From this judgment the defendant and interveners appeal.

Since 1909 the statutes of Nebraska have provided for a police relief and pension fund and designated the sources of revenue to maintain the fund. Laws 1909, ch. 15. In the original act it was provided, among other things, that "all moneys, pay, compensation or salary, or any part thereof, forfeited, deducted or withheld from any member or members of the police force for or on account of absence for any cause, lost or sick time, suspension, sickness or other disability, physical or mental, * * * and all moneys realized, derived or secured from the sale of any condemned, unfit or unserviceable personal property belonging to or in the possession or under the control of the police department, after deducting all expenses incident thereto," should be set apart for the benefit of the fund. These provisions are still in force and now appear in section 14-610, Comp. St. 1929.

It was stipulated by the parties that since July 1, 1909, lost and withheld pay in the amount of $264,675.38 has been wrongfully retained in the general fund of the city, and that unfit and unserviceable automobiles of the value of $63,-334.83 have been sold and not credited to the fund. It was further stipulated that, if said amounts had been timely credited, the sum of $138,048.63 would have been earned by their investment. The total sum of these items constitutes the amount of the judgment entered against the city of Omaha.

This appeal raises four questions for our consideration: (1) Were the plaintiffs proper parties to bring this suit? (2) Did the court have the power to allow an attorney's fee payable out of the funds recovered? (3) If so, was the

amount of the attorneys' fee excessive? (4) Was the petition in intervention properly dismissed? We will devote ourselves to these questions in the order designated.

By express terms, section 14-612, Comp. St. 1929, makes the members of the city council the board of trustees of the police relief and pension fund. The plaintiffs, and others similarly situated, were unquestionably beneficiaries of the fund. A trust relationship therefore existed. The defendant contends, however, that payments made from the fund are on general obligations of the city and will have to be paid whether the fund is strictly maintained as provided by the statute, or not. It is upon this premise that defendant bases his argument that plaintiffs, as retired police officers, are not prejudiced by the failure of the city to make the payments for which suit was brought, and therefore they are not proper parties. While it is true that a policeman's pension is classified as a part of his compensation and not a gratuity, and for which a city is ultimately liable, this is not a controlling factor in determining whether a beneficiary under the pension fund may maintain a suit for himself, and others similarly situated, to preserve or augment the fund. The statute does not provide for a general levy by taxation as a means of raising the revenue necessary to carry out the purposes of the law. The fund is made up from moneys received from and through certain operations of the police department, and while under the holdings of this court the city is liable for pension payments where the rights thereto have vested, whether the funds have been thus provided or not, the beneficiaries will not be relegated to the single remedy of suing for their pension payments. While the city is ultimately liable, the plaintiffs as beneficiaries of the trust are proper parties to invoke the power of the courts to compel compliance with the statute creating the fund. To require the beneficiaries of the fund to wait until the money was exhausted, and then limit them to a suit at law to enforce their individual rights, does not afford the only remedy. Demands were made upon the board of trustees of the fund, demanding that they take steps to enforce

compliance with the statute without result. Under such circumstances, the plaintiffs have sufficient interest to maintain a representative suit on behalf of all the beneficiaries of the fund.

It is urged that this is not a proper case for the allowance of an attorneys' fee out of the fund recovered. The applicable rule is as follows: Where the services of a litigant's attorney result in rescuing or preserving a large amount of property or funds, not only for the benefit of the particular litigant, but for the benefit of all others in the same class, and by means of these services the property or funds are conserved for the benefit of all, the cost thereof, including attorney's fees, should be borne by those benefited by it. *Trustees v. Greenough,* 105 U. S. 527, 26 L. Ed. 1157; *Blacker v. Kitchen Bros. Hotel Co.,* 133 Neb. 66, 273 N. W. 836; *In re Estate of Creighton,* 93 Neb. 90, 139 N. W. 827. Clearly, in the case at bar, all of the beneficiaries of the police relief and pension fund were benefited by the litigation carried on by these plaintiffs. The application of equitable principles requires that all beneficiaries should contribute their due proportion of the expense. The most equitable way of securing such contribution is to make the expenses a charge on the fund.

It is further contended that the fund in question was a public fund and could not for that reason be subjected to the payment of an attorneys' fee. The rule contended for by defendant and interveners is well stated in *Wood v. State,* 125 Ind. 219, 25 N. E. 190, as follows: "The law will not permit the administration of governmental affairs to be embarrassed by the seizure of public property, or public funds, to pay debts due individuals. * * * This settled rule rests upon considerations of public policy, and it is its object to prevent embarrassment in governmental affairs, and not to protect or assist public officers. It is difficult to conceive a case where there is stronger reason for the rule than one, such as this, where a public officer seeks to embarrass the collection of the public revenues by tying up money due a governmental subdivision by asserting a lien."

While we agree with the principle announced therein, we do not believe that it controls the decision in the case before us.

An authoritative text in discussing the subject of public funds says: "The term 'public funds' means funds belonging to the state or to any county or political subdivision of the state; more specifically taxes, customs, moneys, etc., raised by the operation of some general law, and appropriated by the government to the discharge of its obligations, or for some public or governmental purpose; and in this sense it applies to the funds of every political division of the state wherein taxes are levied for public purposes. The term does not apply to special funds, which are collected or voluntarily contributed for the sole benefit of the contributors, and of which the state is merely the custodian." 50 C. J. 854. In conformity therewith it has been held that a state hail insurance fund raised from hail insurance premiums was not a public fund. *State v. Jorgenson,* 29 N. Dak. 173, 150 N. W. 565. A state bonding fund raised from the collection of bond premiums was not a public fund. *State v. Taylor,* 33 N. Dak. 76, 156 N. W. 561. A state compensation fund maintained by contributions of employers is a special and not a public fund. *State v. Olson,* 43 N. Dak. 619, 175 N. W. 714. Funds paid to the state forester for fire protection by those whose property was benefited are not state funds. *State v. Pape,* 103 Wash. 319, 174 Pac. 468.

The foregoing authorities support the proposition that the funds of the police relief and pension fund were not, strictly speaking, public funds. They were not raised by taxation. They were segregated by operation of the statute for a specific use. They could be used lawfully for no other purpose, governmental or otherwise. The moneys in the fund do not belong to the city of Omaha, but are deposited with, and held by, the city treasurer in trust, for the benefit and protection of those who under the terms of the act may become claimants against such fund. In no event do such moneys become the funds of the city. They can be paid

out only as provided in the statute creating the fund. We necessarily conclude that the police relief and pension fund was not a public fund within the purview of the rule contended for by the defendant and interveners.

The trial court allowed an attorneys' fee payable from the funds resulting from the litigation in the amount of $46,605.88. Defendant and interveners contend that this allowance was excessive. It appears from the record that the accounting of the amounts due the police relief and pension fund was made by two employees of the police department in the pay of the city of Omaha, with some supervision on the part of plaintiffs' attorneys. The principal amounts were stipulated to be owing, and, after some negotiations, the earnings of the principal amounts, had they been paid over as they become due, were also agreed to by the parties. A judgment was then entered on the stipulation, and, except for the allowance for attorneys' fees, there was no contest as to the amounts included in the judgment. The principal legal work performed by plaintiff's attorneys was in the presentation of a demurrer and in making preparations for trial. We have examined the evidence as to the value of the services rendered, including the testimony of the expert witnesses based upon the hypothetical questions submitted to them. In determining the value of the services rendered by the plaintiffs' attorneys, we have considered the amount involved, the nature of the litigation, the time and labor required, the novelty and difficulty of the questions raised and the skill required to properly conduct the case, the responsibility assumed, the care and diligence exhibited, the result of the suit, the character and standing of the attorneys, and the customary charges of the bar for similar services. See *Andrews v. Commercial Casualty Ins. Co.*, 128 Neb. 496, 259 N. W. 653; *Hemmer v. Metropolitan Life Ins. Co.*, 133 Neb. 470, 276 N. W. 153; *Prince v. Pathfinder Life Ins. Co.*, 133 Neb. 705, 276 N. W. 661.

A detailed history of the case and of the services rendered are set forth in the record. A complete examination of the evidence viewed in the light of the law applicable thereto

convinces us that the allowance made by the trial court was excessive. We think, under the circumstances of the case and upon consideration of every factor that can be properly considered in fixing an attorneys' fee of this kind, that the sum of $8,500 constitutes a reasonable fee. It is therefore ordered that the proceeds of the judgment, when paid into the police relief and pension fund, be charged with the payment of $8,500 for the benefit of plaintiffs' attorneys.

Interveners complain of the action of the trial court in dismissing their petition in intervention. The interveners as the board of trustees of the police relief and pension fund were charged with the duty of conserving and protecting the trust fund created by the statute. This they failed to do upon demand. Plaintiffs then commenced the suit on behalf of all the beneficiaries of the fund, which they had a lawful right to do. Plaintiffs asked in this petition for a judgment for the amount found to be due and in addition thereto prayed "that the court shall enter such orders, judgments or decrees with reference to said fund and to attorneys' fee, expense and costs of the prosecution of this litigation and the maintenance of said fund as shall to the court may seem just and equitable in the premises." It will readily be observed that upon the payment of the judgment the defendant city of Omaha would have no direct concern in the ultimate disposition of the fund. It would have no direct interest in contesting the allowance of attorneys' fees, expenses and costs out of the proceeds of the fund. The board of trustees would have a direct interest in this phase of the case as well as in any judgment obtained. It is provided by statute section 20-328, Comp. St. 1929: "Any person who has or claims an interest in the matter in litigation, in the success of either of the parties to an action, or against both, in any action pending or to be brought in any of the courts of the state of Nebraska, may become a party to an action between any other persons or corporations, either by joining the plaintiff in claiming what is sought by the petition, or by uniting with the defendants in resisting the claim of the plaintiff, or by demanding anything adversely

to both the plaintiff and defendant, either before or after issue has been joined in the action, and before the trial commences." Under this section of the statute the board of trustees of the police relief and pension fund are permitted to intervene as a matter of right for the purpose of protecting any right that they were obligated by law to protect. We think the trial court erred in not entering a judgment on the petition in intervention for the full amount of the judgment and costs, and directing the payment of a reasonable attorneys' fee from the proceeds of the judgment. The judgment of dismissal entered on the petition in intervention will be reversed and the cause remanded, with directions to enter a judgment thereon in accordance with this opinion. It is, of course, evident that a satisfaction of either judgment would amount to a satisfaction of the other.

AFFIRMED IN PART AND REVERSED IN PART.