## STATE *ex rel.* ADKINS V. LIEN *et al.*

1. Const. Art. 9, Sec. 2, provides that in counties already organized, where the county seat has not been located by a majority vote, the county board shall submit the location of the county seat to the electors of said county at a general election.   *Held*, that a citizen of the United States who is a resident freeholder, taxpayer and elector of the county has such interest In the matter as entitles him, as relator, to apply for a writ of mandamus to compel such board to perform the duty prescribed by such section.

2. Const. Art. 9, Sec. 2, provides that in counties already organized, where the county seat has not been located by a majority vote, it shall be the duty of the county board to submit the location of the county seat to the county electors at a general election, and that the place receiving the majority of all votes cast will be the county seat.   *Held*, that Laws 1890 Chap. 64, Sec. 1, in so far as it requires the presentment of a petition to the board of county commissioners in cases where the county seats have not been located by a majority vote, in order to entitle or require such board to act, is in conflict with such constitutional provision.

(Opinion filed Oct. 28, 1896.)

Original application by the state of South Dakota, on the relation of George Adkins, for a writ of mandamus to compel E. E. Lien and others, constituting the board of county com- missioners of the county of Roberts, state of South Dakota, to submit the question of the location of the county seat of such county to the voters thereof, in conformity with the require- ments of the constitution.    Peremptory writ granted.

The facts are stated in the opinion.

*D. C. & W. R. Thomas,* and *Aikens, Bailey & Voorhees,* for relator.

*Howard Babcock,* State's Attorney, and *A. S. Crossfield,* for defendants.

FULLER, J.    This original application for a writ of manda- mus, made by the state, on the relation of George Adkins, is to compel the board of county commissioners of Roberts county to submit the question of the location of the county seat of said county to the voters thereof, in conformity with Sec. 2 of Art. 9 of the constitution of this state, which will receive merited attention with reference to its application to the undisputed facts presented, which, as the record stands, must be treated as verities.    To the petition of the relator the defendants de- murred, on the following grounds:    "(1) That the application upon which the writ is issued and based does not show that the person making the same was properly interested.    (2) That the application upon its face does not state facts sufficient to warrant the issuance of the writ.    (3) That the application does not upon its face show that the necessary steps were taken to require or demand that the board should act upon the peti- tion presented.    (4) That the act sought to be compelled can- not be compelled by this proceeding."    This demurrer was overruled, and, in the absence of a properly verified answer, the matter was heard and determined on the papers of the ap- plicant, who is shown to be a citizen of the United States, and a resident, freeholder, taxpayer, and elector of said Roberts

county.   It further appears that by a special act of the territorial legislature, passed and approved on the 9th day of March, 1885, said county seat was established at Wilmot, from which place it has never been removed; that said county is organized, and the county seat thereof has never been located by a majority vote; that, at least sixty days before the next general election, a petition signed by more than a majority of the legal voters of said county was presented to the board of county commissioners, requesting that the question of the location of the county seat be submitted to the qualified electors of said county at the next general election; and that notwithstanding said petition, and a subsequent demand duly made, said board refused, and still refuse, to submit said proposition in accordance with the constitutional provision above cited, which is as follows:   "In counties already organized, where the county seat has not been located by a majority vote, it shall be the duty of the county board to submit the location of the county seat to the electors of said county at a general election.   The place receiving a majority of all votes cast at said election shall be the county seat of said county."

Under our view of the facts admitted by the demurrer and established at the hearing, no further recital thereof is essential to a proper consideration of the questions of law to be determined.   As disclosed by the record, this proceeding was instituted to procure the enforcement of a public right—a matter of general interest to every voter and taxpayer of Roberts county, each one of whom, as a party beneficially interested, is entitled to compel by mandamus the performance of such public duty, specially enjoined upon the defendants as a board of county commissioners.   The rule that, where the relief sought is a public matter or one of public right, any taxpayer or elector may apply for and obtain a writ of mandamus, in a proper case, to enforce the performance of such public duty, rests firmly upon reason, and is sustained by the great weight of American authority.   Hyatt v. Allen, 54 Cal. 353; Chuma-

sero v. Potts, 2 Mont. 242; State v. Brown, 38 Ohio St. 344; State v. Ware, 13 Or. 380, 10 Pac. 885; Sansom v. Mercer, 68 Tex. 488, 5 S. W. 62; State v. Weld, 39 Minn. 426, 40 N. W. 561; State v. City of Kearney, 25 Neb. 262, 41 N. W. 175; Moses v. Kearney, 31 Ark. 261; State v. County Judge of Marshall Co., 7 Iowa 186; State v. City Council of Camden, 39 N. J. Law, 620; Board of Com'rs of Clark Co. v. State, 61 Ind. 75; State v. Francis, 95 Mo. 44, 8 S. W. 1; Union Pac. R. Co. v. Hall, 91 U. S. 343. To give to the electors of every organized county in the state whose seat of government had not been established by an expression of popular will, at the ballot box, the right to locate their county seat by a majority vote, was the clear intention of the framers of our constitution. The provision above quoted is clearly and in all respects self-executing, and the public duty imposed thereby upon the board of county commissioners continues incessantly until the question has been submitted in conformity with the express command therein contained. Neither a petition nor a demand was contemplated by the framers of our constitution; and Sec. 1, Chap. 64, Laws 1890, in so far as the same relates to the presentment of a petition to the board of county commissioners in cases where county seats have not been located by a majority vote, is inoperative, because in conflict with the constitutional provisions under consideration. The duty imposed and sought to be enforced is of a public nature, resting wholly upon the defendants by virtue of their office, and no demand is necessary. People v. Board of Education of Upper Alton School-Dist., 127 Ill. 613, 21 N. E. 187; High, Extr. Rem. § 41, and cases therein cited.

The conclusion to which we have come renders unnecessary a consideration of counsel's contention concerning the sufficiency of the petition presented to the board. The peremptory writ of mandamus applied for should issue, in accordance with the prayer of the relator and it is so ordered.