STATE OF MISSOURI at the relation of ST. LOUIS POLICE RELIEF ASSOCIATION, a Corporation, v. WILLIAM L. IGOE, GEORGE T. PRIEST, ALBERT BOND LAMBERT, JOHN J. PHELAN and BERNARD F. DICKMANN, as Members of the Board of Police Commissioners of the City of St. Louis, Appellants.—107 S. W. (2d) 929.

Division One, June 4, 1937.

*Edgar H. Wayman* and *John G. Burkhardt* for appellants.

*Jacob M.* and *Arthur V. Lashly* for respondent.

FRANK, P. J.—Action in mandamus brought in the Circuit Court of the City of St. Louis by the St. Louis Police Relief Association against the members of the Board of Police Commissioners of said city to compel them to forthwith deliver to petitioner certain moneys now in their possession. An alternative writ of mandamus was granted which, on final hearing, was made peremptory. This appeal followed.

The St. Louis Police Relief Association was organized as a corporation in the year 1900 under statutory authority (now Sec. 8978, R. S. 1929). That section reads as follows:

"Any police force organized or existing by authority of the laws of this state in any city having a population of over one hundred thousand inhabitants, and in any city of the second class, is hereby authorized and empowered to form a relief association under the general incorporation laws of this state, and to create a fund for the purpose of affording relief to such members of their organization as may become sick or disabled while in the discharge of their duties, or who may become incapacitated by long years of service, and for aiding the families of police officers who may die while in the service of any police department, and for such other similar purposes as may be set forth in their articles of incorporation."

The funds necessary for the operation of this relief association were provided for by statute (now Sec. 8979, R. S. 1929). That section reads as follows:

"This fund shall be created in the following manner: All moneys at present remaining in the hands of any unincorporated police relief committee or association; all moneys arising from the sale of unclaimed personal property; all fines assessed against any delinquent officers by any board of police commissioners; all monthly, annual or periodical assessments of members as may be provided for by the rules of said association; all percentages of rewards allowed to member of any police force under the regulations of its department."

The Police Relief Association has continued to operate for the purposes named in the statute from the date of its organization in 1900 to the present time. From 1900 to some time in 1923, the Board of Police Commissioners, in compliance with Section 8979, supra, delivered to the Police Association the funds accumulated pursuant to the provisions of that section. From 1923 to the present time said board has refused to deliver any of such funds to the Police Relief Association. As a result of such refusal, said board, at the date of the trial below, had in its possession from the sources

mentioned in Section 8979 the total sum of $35,543.46. This mandamus action was brought to compel said board to deliver said sum to the Police Relief Association.

Prior to 1926 neither the State nor any municipality thereof had authority to provide for the payment of pensions from public funds to the members of any organized police force. In November, 1926, the Constitution was amended by the adoption of Section 48a of Article 4, which reads as follows:

"The General Assembly shall have the power to provide by law, or to authorize any municipality in this State to provide by ordinance, for the pensioning of members of any organized police force and the widows and minor children of deceased members thereof; and nothing in this Constitution contained shall prohibit, or be construed to prohibit, the exercise of such power or authority by the General Assembly."

Pursuant to the provisions of above constitutional amendment, the General Assembly in 1929 enacted Article 2, Chapter 51, Revised Statutes 1929, consisting of Sections 8906 to 8918, both inclusive, known as the "Police Retirement Pension System in Cities of Five Hundred Thousand or More." This act is a comprehensive police pension law and provides for service retirement benefits, ordinary death benefits, and accidental death benefits. It is appellants' position that this 1929 enactment providing for the Police Retirement Pension System repealed or superceded Sections 8978 and 8979 under which the Police Relief Association was incorporated, and under which it has operated since its incorporation in the year 1900. Since the Police Relief Association's right to the funds in question is based upon the provisions of Section 8979, it follows that if, as contended by appellants, said section was repealed by the 1929 act, such association would not be entitled to the funds accumulated in the hands of the Board of Police Commissioners from the sources mentioned in said section after its repeal.

There is no express provision in the 1929 act repealing Section 8979. It follows, therefore, that the later act did not repeal the former statute unless it did so by necessary implication. We need not cite authorities to the effect that repeals by implication are not favored by the law. The question of repeal is one of intention and the presumption is against the intention to repeal where express terms are not used. [State ex rel. Moseley et al. v. Lee et al., 5 S. W. (2d) 83, 88, 319 Mo. 976; State ex rel. Heimburger v. Wells, 210 Mo. 601, 109 S. W. 758; State ex rel. Bond v. Rutledge, 321 Mo. 1090, 13 S. W. (2d) 1061, 1065.]    We will not enter into an extended discussion of the law of repeal by implication because the 1929 act contains express provisions which, in our judgment, unmistakably show that it was not the intention of the Legislature, by that act, to repeal the statute under which the St. Louis Police

Relief Association was organized and by which funds for its operation are provided. [Now Secs. 8978 and 8979, R. S. 1929.] Note the provisions of the 1929 act (now Sec. 8915, R. S. 1929). The pertinent parts of that section read as follows:

"Upon vote of a majority of the members of any incorporated police pension system or association now existing in said cities within ninety days from the date this article becomes effective, such association shall be dissolved and shall turn over to the retirement system such part of its assets as may be required to cover the pension reserve of all pensions payable to pensioners of such system or association on the roll October 1, 1929. The excess, if any, of the assets over the amount of such pension reserves shall be divided among the members of such system or association in accordance with a plan mutually agreed upon by the board of trustees of the retirement system and the board of trustees of such system or association. . . . Upon failure of a majority of the members of any such system or association to vote within ninety days of the date this article becomes effective, to dissolve the said system or association, it may continue to operate, but the retirement system shall assume no obligation to pay the benefits otherwise payable under the provisions of this section."

The provisions of the 1929 act, last above quoted, expressly authorized the St. Louis Police Relief Association to *continue to operate* unless a majority of its members, within ninety days after the 1929 act became effective, voted to dissolve. There is no showing that a majority of its members did vote to dissolve, within that ninety-day period or at any other time. The only reasonable construction which can be given this statute is that the association was authorized to continue to operate as it had been operating—that is—under the statutes which gave it birth and provided funds for its operation. The association could not continue to operate if the statutes under which it had been operating were repealed by the 1929 act. The provision in the statute authorizing the association to continue to operate in event a majority of its members did not vote to dissolve, shows an unmistakable intention on the part of the Legislature not to repeal these statutes by the passage of the 1929 act.

Appellants cite numerous cases in support of their contention that the 1929 act repealed Section 8979, supra, which provides support for the Police Relief Association, and asserts that the case most nearly in point is State ex rel. Hocker v. Nolte, 330 Mo. 299, 48 S. W. (2d) 916.

The facts in the Hocker case show that a policeman was struck by an automobile and killed while in the performance of his duty as a policeman. Section 7547, Revised Statutes 1929, which was enacted long prior to the enactment of the 1929 Police Retirement Pension Act, provided as follows:

"The boards of police are hereby authorized to make all such rules and regulations, not inconsistent with this article, or other laws of the State, as they may judge necessary . . . for the relief and compensation of members of the police force injured in person or property in the discharge of their duties, and the families of the officers or men killed while in such discharge of duties: *Provided* that the allowance shall not exceed, in any one instance, twelve months' pay."

On March 27, 1931, the Board of Police Commissioners, pursuant to said Section 7547, and a rule of the board based on said statute, awarded the widow of said deceased policeman the sum of $2160, the equivalent of her deceased husband's salary for twelve months. A voucher was issued for said sum, but the comptroller of the city refused to audit and approve said voucher or draw a warrant on the city treasury therefor. Mandamus was brought in this court to compel him to do so. We denied mandamus in that case on the ground that the Board of Police Commissioners had no authority to make the award for the reason that the 1929 Police Retirement Pension Act repealed the provisions of Section 7547, Revised Statutes 1929, under which said award was made. Section 8908 of the 1929 act provides as follows:

"All persons who become policemen and all policemen who enter or re-enter the service of said cities after the date the retirement system begins operation shall become members as a condition of their employment and shall receive no pension or retirement allowance from any other pension or retirement system supported wholly or in part by said cities or the State of Missouri, nor shall they be required to make contributions under any other pension or retirement system of said cities or the State of Missouri, anything to the contrary notwithstanding."

The widow's deceased husband became a member of the 1929 Police Retirement Pension System as a condition of his employment as a policeman. After his death the widow was paid a monthly pension of $84.92 pursuant to the provisions of the 1929 act. This pension was paid in whole or in part from the city treasury. To allow her another pension of $2160 from the city treasury would violate the provisions of Section 8908 of the 1929 act, which provides, in effect, that no policeman shall receive a pension from any system other than that provided in the 1929 act, if it is supported wholly or in part by the city or the State. For this reason we held in the Hocker case that the 1929 act which provides a comprehensive pension system supported in whole or in part by the city, repealed Section 7547 which authorized the Board of Police Commissioners to provide for the relief and compensation of members of the police force injured in person or · property in the performance of their duties, and the families of the officers or men killed while in such

discharge of duty, to be paid out of the city treasury. We adhere to the ruling in the Hocker case, but that case furnishes no authority for the contention that the 1929 act repealed Sections 8978 and 8979, supra, which authorized the organization of the Police Relief Association and provides funds for its operation.

While it is true that the 1929 act makes all policemen members of the retirement pension system created by that act, and prohibits said policemen from receiving a pension or retirement allowance from any other pension or retirement system supported wholly· or in part by the city or the State, it does not prohibit them from receiving a pension or retirement allowance from any other pension or retirement system which is not supported wholly or in part by the city or the State. So the question presented is whether or not the Police Relief Association is supported wholly or in part by the city or the State. The Police Relief Association is a private corporation organized under the provisions of Section 8978, supra, and is under the control of its own members. If the funds created by Section 8979, supra, for the benefit of such association are public funds within the meaning of Section 46 of Articlel IV of the Constitution which prohibits the General Assembly from granting or authorizing the making of a grant of public money to a private corporation, then the Police Relief Association, a private corporation, would not be entitled to such funds. Section 8979 which creates the funds in question reads as follows:

"This fund shall be created in the following manner: All moneys at present remaining in the hands of any unincorporated police relief committee or association; all moneys arising from the sale of unclaimed personal property; all fines assessed against any delinquent officers by the board of police commissioners; all monthly, annual or periodical assessments of members as may be provided for by the rules of said association; all percentages of rewards allowed to member of any police force under the regulation of its department."

Are the funds created by this section public funds within the meaning of the constitutional provision which prohibits the granting of public money to a private corporation? We think not. 50 Corpus Juris, page 854, section 40, defines public funds as follows:

"The term 'public funds' means funds belonging to the state or any county or political subdivision of the state; more especially taxes, customs, moneys, etc., raised by operation of some general law, and appropriated by the government to the discharge of its obligations, or for some public or governmental purpose. . . ."

The case of State ex rel. v. Olson, State Treasurer, 43 N. D. 619, 175 N. W. 714, 715, 716, defines public funds thus:

"The money referred to in said section is money belonging to the state, which has been accumulated in the treasury as public funds, which are to be used in carrying on the state government. It means

such money as is raised by taxation, or which has accumulated in the treasury by the payment of fees authorized by law to be charged for various purposes.''

The case of Ayers et al. v. Lawrence et al., 58 N. Y. 192, 198, gives the following definition:

'' 'Funds' may mean cash on hand, stocks, etc., and when 'public funds' are referred to, taxes, customs, etc., appropriated by the government to the discharge of its obligations, are understood.''

The case of City of Seattle v. Stirrat et al., 24 L. R. A. (N. S.) 1275, was an action brought by the city against Stirrat & Goetz, paving contractors, and United States Fidelity & Guaranty Company, to recover the sum of $400. In making local improvements in the city of Seattle, certain preliminary expenses are incurred, to cover cost of surveys, advertising, and lists of owners of property to be effected, as well as all other expenses incidental to letting the main contract. The city advances the money to meet these expenses from its general fund, and the amount so advanced is known as the ''fixed estimate,'' and is charged against the proposed improvement, to be thereafter laid against the property benefited, together with the actual cost of the work. To insure the repayment of this advance, the city requires that the amount thereof be repaid by the contractor, for which he is finally reimbursed in bonds issued against the property improved. Stirrat & Goetz, contractors for the improvement, paid the $400 ''fixed estimate'' by their check payable to the city comptroller and received $400 in improvement bonds in return therefor. This $400 never reached the city treasury. The comptroller appropriated it to his own use. The contract for the improvement provided that this $400 should be paid into the city treasury. The city brought suit against the contractors and their bondsman to recover the $400. In the disposition of the case it was necessary to determine whether or not the $400 in question was public money. In holding that it was not, the court, among other things said:

''There is nothing in the general law to warrant the assumption that the sovereign power of the state is involved in grading streets for the benefit of private property. Certainly mandamus would not lie to compel it, nor would injunction lie at the instance of a citizen whose property was not immediately affected. The moneys received in aid thereof are not 'moneys of the city' within the charter meaning of the term, but may be funds of the city within the terms of their contract, or in the sense that it is the duty of the city to collect and disburse them. It is only moneys raised by the operation of some general law that become 'moneys of the city,' or 'moneys belonging to the city,' or 'public funds,' or 'public moneys,' and subject to the charter provisions with reference to their deposit. Such laws, whether they be general or special, can have

no reference to such funds as may come to a municipality through methods with which the public as a whole have no concern."

■ Further contention is made that the case of State ex rel. v. Kimmel, 256 Mo. 611, 165 S. W. 1067, held Section 3459, Revised Statutes 1909 (now Sec. 8979) unconstitutional.

At the time the Kimmel case was decided, Section 3459, Revised Statutes 1909, made the same provision for funds for the Police Relief Association as are provided in the present statute, Section 8979, Revised Statutes 1929, and in addition thereto made the following further provision concerning witness fees of members of the association.

"And in addition, members of said relief association shall be allowed witness fees in all cases in all courts of record; also, in all municipal or city police courts, coroner's inquests, justice of the peace courts, whenever attending therein in matters pertaining to the discharge of their duties as witnesses: said witness fees to be collected solely by such officer as may be designated and authorized to collect the same, under the corporate authority of said relief association, and for its exclusive benefit."

The opinion in the Kimmel case points out that under the law such witness fees were paid out of public funds by drawing on the public treasury. We held in that case that witness fees taxed in favor of the Police Relief Association and paid with public funds amounted to a grant of public money to a private corporation in violation of Section 46 of Article 4 of the Constitution which prohibits the granting of public money to individuals and corporations. The opinion points out other reasons why this part of the statute was unconstitutional. The constitutionality of other provisions of the statute were not assailed or passed upon by the court. After the decision in the Kimmel case holding the provision of the statute as to witness fees unconstitutional, the statute was amended by eliminating that provision, thus leaving the statute as it now stands in Section 8979. For these reasons appellant's contention that the Kimmel case repealed the entire section must fall.

■ Appellants further contend that even though it be held that the funds in question are not public money, yet, they are subject to statutory provisions, and when the Police Relief Association receives such funds by virtue of Section 8979, it is receiving support from the State, in violation of Section 8908 of the 1929 act which provides a pension for all policemen as a condition of their employment, and prohibits them from receiving a pension or retirement allowance from any other pension or retirement system supported wholly or in part by the city or the State.

We construe the words "supported wholly or in part by the said cities or the State of Missouri," as used in Section 8908, to mean supported wholly or in part by "public money" of the said cities

or the State. If the funds in question were public money, the General Assembly could not grant them to the Police Relief Association. The fact that the Legislature did give these funds to such association, amounts to a legislative interpretation that such funds are not public money. While we are not bound by such legislative interpretation, it is persuasive. We rule this contention against appellants.

Further contention is made that the payment of the funds in question to the Police Relief Association is violative of Sections 3774 and 3778, Revised Statutes 1929.

Both sections cited provide for the disposition of property alleged to have been stolen, purloined, embezzled or obtained by false pretenses, or to have been obtained in any of the modes specified in the article concerning offenses against public and private property. The property involved in this action does not come within the class of property dealt with in the statutes invoked. For that reason such statutes have no application to this case.

The judgment below should be affirmed. It is so ordered. All concur, except *Douglas, J.,* not voting because not a member of the court when cause was submitted.