STATE OF MISSOURI, RESPONDENT, v. HATTIE MALONE, APPELLANT.—
192 S. W. (2d) 68.

Springfield Court of Appeals.   January 11, 1946.

*Ted M. Henson* and *Cope & Ponder* for appellant.

*David W. Hill* for respondent.

VANDEVENTER, J.—On May 14, 1945, the Prosecuting Attorney of Butler County, Missouri, filed in the circuit court thereof the following verified information:

"David W. Hill, Prosecuting Attorney of Butler County, Missouri, upon his official oath, information and belief, informs the Court that the defendant, Hattie Malone, in Poplar Bluff Township, Butler County, Missouri, in the afternoon of the thirteenth day of May, 1945, it being the first day of the week commonly called Sunday, did then and there unlawfully sell and deliver to Cecil Eley, for the sum of forty cents, two pints of beer, a fermented liquor, the container bottles bearing the label Budweiser Beer, and commonly called 'Three-Two Beer'; against the peace and dignity of the State."

The evidence at the trial showed that the defendant about 12:30 p. m. May 13, 1945, which was Sunday, sold two bottles of Budweiser Beer, commonly called 3.2 beer, and the evidence further showed that beer was a fermented liquor. She was convicted by the jury and her punishment assessed at a fine of $25. Motion to quash the information was filed and overruled, an instruction in the nature of a demurrer was filed at the close of the State's evidence and another at the close of all the evidence and they, too, were overruled. Two errors are alleged in appellant's motion for new trial. (1) Failure

of the court to quash the information, (2) failure of the court to sustain the demurrer asking for directed verdicts for defendant. The only question raised in the brief is whether or not Article 2 of Chapter 32 of the Missouri Revised Statutes Annotated of 1939 repealed Section 4742, by implication. Section 4742 is as follows:

"Section 4742. SELLING GOODS ON SUNDAY.

"Every person who shall expose to sale any goods, wares or merchandise, or shall keep open an ale or porter house, grocery or tippling shop, or shall sell or retail any fermented or distilled liquor on the first day of the week, commonly called Sunday, shall, on conviction, be adjudged guilty of a misdemeanor and fined not exceeding fifty dollars."

The pertinent sections of Article 2 of Chapter 32, *supra,* are 4950 and 4995. They follow:

"Beer having an alcoholic content of not less than one-half of one per cent by volume nor exceeding 3.2 per cent by weight, is hereby declared to be nonintoxicating beer, and may be lawfully manufactured and sold, or sold, in this State by any holder of a permit issued by the supervisor of liquor control of this State, authorizing such manufacture and sale, or sale, and may be lawfully transported, sold and consumed, in this State, and may be lawfully shipped into, or out of, this State subject to such inspection fees, and/or taxes, and under such regulations as may be provided by law, and such manufacture, sale, transportation, and consumption, shall be exempt from the provisions of chapter 31, Revised Statutes of Missouri, 1939; and exempt, also, from any of the provisions of said chapter and of any other law of this State in conflict with the provisions of this article. All beverages having an alcoholic content of less than one-half of one per cent by volume shall be exempt from the provisions of this article but subject to inspection as provided in article 7 of chapter 58."

"Section 4995. No person having a license under the provisions of this article, shall sell, give away or otherwise dispose of, or suffer the same to be done, upon or about his premises, any nonintoxicating beer in any quantity between the hours of one-thirty o'clock a. m., and six o'clock a. m., and any person violating any provision of this section shall be deemed guilty of a misdemeanor and shall be punished by imprisonment in the county jail for a term of not more than one year, or by a fine of not less than fifty dollars ($50) nor more than one thousand dollars ($1,000) or by both such fine and jail sentence."

In determining this point, it might be well to consider briefly the well-established rules of law governing the repeal of statutes by implication. There is no contention that Section 4742 has been specifically repealed. If Section 4742 has not been repealed the information is sufficient and the motion to quash it should have been overruled. [State v. Watts, 101 Mo. App. 658, 74 S. W. 377; State v. Effinger,

44 Mo. App. 81; State v. Dengolensky et al., 82 Mo. 44; State v. Williamson, 21 Mo. 496; State v. Roehm, 61 Mo. 82; State v. Kock, 61 Mo. 117; State v. Nations, 75 Mo. 53.]

Repeal of statutes by implication is not favored. [State ex rel. St. Louis Police Relief Ass'n v. Igoe, 107 S. W. (2d) 929, 340 Mo. 1166; Graves v. Little Tarkio Drainage Dist. No. 1, 134 S. W. (2d) 70, 345 Mo. 557; Coleman v. Kansas City, 156 S. W. (2d) 644, 348 Mo. 916; Lajoie v. Central West Casualty Co. of Detroit, 71 S. W. (2d) 803, 228 Mo. App. 701.]

The repeal of a statute by a subsequent statute is a question of intention, and there is a presumption against the intention to repeal where express terms are not used. [State ex rel. St. Louis Police Relief Ass'n v. Igoe, supra.]

If by any fair interpretation all the sections of the statutes can stand together, there is no repeal by implication. [Hull v. Baumann, 131 S. W. (2d) 721, 345 Mo. 159.]

An act may be repealed by necessary implication, if a later act is so repugnant to the former that the two cannot stand, even though no mention is made of the former act in the later. [Vining v. Probst (Mo. App.), 186 S. W. (2d) 611.]

But though two acts are seemingly repugnant they must, if possible, be so construed that the later will not operate as a repeal, by impli-, cation, of an earlier one and if they are not irreconcilably inconsistent, both must stand. [Graves v. Little Tarkio Drainage District No. 1, supra.]

The repugnancy between the later and the prior statutes must be wholly irreconcilable in order to work a repeal of the prior act. [State ex rel. Wells v. Walker, 34 S. W. (2d) 124, 326 Mo. 1233; Use of Geo. B. Peck Co. v. Brown, 105 S. W. (2d) 909, 340 Mo. 1189; Graves v. Little Tarkio Drainage Dist. No. 1, supra; State ex rel. City of Republic v. Smith, 139 S. W. (2d) 929, 345 Mo. 1158.]

Section 4742 first appears in Revised Statutes, 1825, Page 311 Section 92. At that time it limited the acts to the period after "10 o'clock in the morning." Later this section was amended and appeared in the Missouri Revised Statutes 1845, Page 405, Sec. 34, eliminating the 10 o'clock provision and since that time, it has been in the same wording as above set forth. It is true that "fermented liquor" may be intoxicating but there is nothing in that section to indicate that "fermented liquor" would include intoxicating liquor, only.

Section 4743 modifies Section 4742 by eliminating from that Section the sale of drugs, medicines, provisions or other articles of immediate necessity.

The object of Section 4742 is to enforce a cessation from labor on one day in seven in order to promote the health, peace and good order of society. The fact that the same day is also observed as a day of

rest and devotion by the members of many religious organizations does not make such statute a religious regulation or duty. It is a valid exercise of the police power of the State. Statutes of this character are not new in the history of legislation. They originated in Rome during the reign of Constantine the Great in A. D. 321, and were adopted in England during the reign of Charles II (29 Chas. II. c. 7, page 412; Rosenbaum v. State, 119 S. W. 388, 131 Ark. 251, L. R. A. 1918B. 1109; Carver v. State, 69 Ind. 61, 35 Am. R. 205; Rodman v. Robinson, 47 S. E. 19, 134 N. C. 503, 101 Am. St. Rep. 877, 65 L. R. A. 682; State v. Barnes, 132 N. W. 215, 22 N. D. 18, 37 L. R. A. (N. S.) 114, Ann. Cas. 1913E. 930). In this country perhaps the first such legislation was in the Virginia Colony in 1617 (10 Va. L. Reg. 684), and in many of the states (if not all), there are similar statutes. In this State they have been held constitutional as a valid exercise of the police power of the State. [State v. Campbell, 105 S. W. 637, 206 Mo. 579; City of Springfield v. Smith, 19 S. W. (2d) 1, 322 Mo. 1129; State v. Chicago Burlington & Quincy R. Co., 143 S. W. 785, 239 Mo. 196.] In the case last cited it was said:

"Sunday is a day of a dual character. It is the Christian's day of worship; it is also the day of rest of men everywhere, irrespective of whether they have or have not a creed or a religious belief. The law does not deal with Sunday as a day of worship, but with it only as a day of rest. The confusion of the two characteristics of the day has doubtless contributed to the large number of conflicting decisions by the courts.

"The Missouri Sunday laws have regard to that day as a day of rest, and not to the religious character of the day. They are civil, not religious, regulations, and are based upon a sound public policy which recognizes that rest one day in seven is for the general good of mankind. [Hennington v. Georgia, 163 U. S. 299-304, 16 Sup. Ct. 1086, 41 L. Ed. 166.] Those laws are sustained as civil, municipal, or police regulations, without reference to the fact that the day of rest is also the Christian's day of rest and worship."

The general theory of such legislation is well stated in 60 Corpus Juris, p. 1029, Sec. 7, as follows:

"The object and policy of laws designating Sunday as a day of rest and prohibiting the doing of specified acts on that day is in general to enforce a cessation from labor on one day in seven and to protect citizens in the enjoyment of repose and quiet on the day thus assigned for rest, and thus to promote the health, peace, and good order of society; ordinarily, it is not the purpose of such laws to impose the observance of Sunday as a purely religious duty, . . ."

Section 4742 was enacted ten years before there was any law in this State regulating the sale of intoxicating liquors (R. S. Mo. 1835,

Page 316), and the first statute only required an Innkeeper to have a license to sell any wine or spirituous liquors in quantities less than one quart. It contained no criminal sanction, but permitted the State to bring a civil suit not exceeding the sum of two hundred dollars for each violation.

Section 4742 does not condemn the sale of fermented liquors because they contain or do not contain alcohol, or because they are intoxicating or non-intoxicating. It is the sale on Sunday that is condemned, because that day is designated by statute as a day of rest. A sale of tobacco (State v. Ohmer, 34 Mo. App. 115) is as much a violation, under this statute, as the sale of a gallon of alcohol. Merely to keep a dramshop open on Sunday without any sales or intent to sell violates this section. [City of Louisiana v. Anderson, 73 S. W. 875, 100 Mo. App. 341.] A "liquor" may be intoxicating or nonintoxicating (Webster's International Dictionary, Funk & Wagnall's New Standard Dictionary) and where that word is used in a statute, it does not necessarily exclude nonintoxicating beverages or liquors. [Crane v. State, 156 S. E. 321, 157 Miss. 548.] If the word "liquor" always means "intoxicating liquor", why add the adjective at all?

We have been cited to no case, nor have we found any, that holds that "fermented liquor" as used in this statute, *must* mean "intoxicating liquor." A fermented liquor may or may not be intoxicating. The courts will take judicial notice that beer is a fermented liquor. [State v. Watts, 101 Mo. App. 658, 74 S. W. 377; State v. Effinger, *supra.*] But they will not take judicial notice that any beverage called "beer" is intoxicating (Louisville & Nashville Railroad Co. v. Falls City Ice & Beverage Co., 61 S. W. (2d) 639, 349 Ky. 807, 91 A. L. R. 509; Blatz v. Rohrbach, 22 N. E. 1049, 116 N. Y. 450, 6 L. R. A. 669; 9 Wigmore on Evidence (3 Ed.), page 579, sec. 2582), or contains alcohol. [Daugherty v. State, 116 So. 308, 22 Ala. App. 300.]

There is as much labor involved in selling a bottle of buttermilk (which by the way is a fermented liquor) as there is in selling a bottle of intoxicating or nonintoxicating beer. The act of selling and not the quality of the article sold is the thing Section 4742 condemns.

In 1935, 110 years after the enactment of Section 4742, the Legislature, without mentioning that section, enacted legislation relating to "nonintoxicating beer." (Art. 2, Chap. 32, R. S. Mo. Anno. 1939). Clearly the purpose of this enactment was to control by licensing, and otherwise, those who deal in this commodity at all hours on all days, and incidentally, to raise some revenue. It was as effective on Monday as on Sunday. It has nothing to do with a day of rest. It declares that beer having an alcoholic content of not less than one-half of one percent by volume, nor exceeding 3.2 percent by weight is nonintoxicating beer, and may be lawfully manufactured and sold by a holder of a permit or license. [See Secs. 4952, 4952a and 4953.] But a license does not permit one to sell on Sunday. [State v. Ambs,

20 Mo. 214; Lambert v. State, 8 Mo. 493.] The privileges secured by a license do not include the right to disregard any valid existing law. [33 Corpus Juris, page 534, Section 93.] Section 4950 states that the permit to sell nonintoxicating beer is subject to "such regulations as may be provided by law, . . . ". The ordinary merchant has a county and municipal license, yet he comes within the provisions of section 4742.

A license or permit is not required in order to lawfully sell any beer having less than one-half of one per cent by volume. Yet that beer is a fermented liquor. Section 4995 forbids the sale of any nonintoxicating beer between the hours of 1:30 o'clock a. m. and 6:00 o'clock a. m. As stated, this provision is not applicable to Sunday, alone. It applies to each day of the week. Can we say that it is entirely repugnant to Section 4742, which covers the whole 24 hours of Sunday, because Section 4995 merely increases the penalty to sell between 1:30 o'clock a. m. to 6:00 o'clock a. m. of each and every day? It applies to sales of nonintoxicating beer during four and one-half hours each day including Sunday, but it does not provide that the possessor of a license may sell fermented liquors at any other hour on Sunday. If these statutes can be construed to operate together, under the holdings of the courts, that should be done. Isn't it altogether logical to say that Section 4995 is directed at week days and that Section 4742 is directed at Sunday? The only way to adjudge these statutes in conflict is to assume that by forbidding the sale of non-intoxicating beer between 1:30 a. m. to 6:00 a. m. every day of the week was, by implication, to say that one can legally sell it on Sunday before 1:30 a. m. and after 6:00 a. m. The maximum punishment for selling fermented liquor on Sunday under Section 4742 is $50. The maximum punishment for selling nonintoxicating beer on any day between 1:30 a. m. and 6:00 a. m. is one year in jail and a fine of $1,000. Perhaps the Legislature thought the selling of nonintoxicating beer on any night during the late hours, when most people are in bed, should be more severely punished.

We believe that each of these statutes can still be given force and effect without violence to either and that Article 2 of Chapter 32 does not, by implication, repeal Section 4742. If they do not, the trial court did not commit error in overruling the motion to quash the information or in overruling the demurrer at the close of the State's evidence and at the close of all the evidence, or in refusing to give appellant's peremptory instructions. The judgment of the trial court should therefore be, and is, affirmed. *Fulbright, P. J.,* and *Blair, J.,* concur.