**Ron PARSONS, Jr., and George Z. Peterson for themselves and others similarly situated, Plaintiffs and Appellants,**

v.

**The SOUTH DAKOTA LOTTERY COMMISSION and Its Executive Director, Susan Walker; Michael Dacy, Diane Dacy, Scott M. Anshutz, Julie A. Anshutz, and Dacshutz, Inc., d/b/a Mr. "G's"; Ionia Klein; and Robin Parsons, Defendants and Appellees.**

No. 17994.

Supreme Court of South Dakota.

Argued March 15, 1993.

On Reassignment April 8, 1993.

Decided Aug. 4, 1993.

Arlo D. Sommervold, James E. Moore of Woods, Fuller, Shultz & Smith, Sioux Falls, for plaintiffs and appellants.

Lee M. McCahren, Vermillion, for defendant and appellee South Dakota Lottery Com'n and its Executive Director Susan Walker.

Wally Eklund, Charles Rick Johnson, Michael Abourezk and Stephanie Pochop, Johnson, Eklund & Abourezk, Gregory, for defendants and appellees Michael Dacy, Diane Dacy, Scott M. Anshutz, Julie A. Anshutz and Dacshutz, Inc., d/b/a Mr. G's.

Lawrence L. Piersol, Cheryle Wiedmeier of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for defendant and appellee Ionia Klein.

HURD, Circuit Judge (on reassignment).

Ron Parsons, Jr. and George Z. Peterson appeal from the trial court's order denying their cross-motion for summary judgment and granting summary judgment to the South Dakota Lottery Commission, Susan Walker, Ionia Klein, Michael Dacy, Diane Dacy, Scott M. Anshutz, Julie A. Anshutz, Dacshutz, Inc., and Robin Parsons. We affirm.

## FACTS

This appeal involves a dispute over the proper ownership of a $12.4 million winning lottery ticket. The underlying facts of this case have previously been before this Court and will be only briefly recounted here. *See Dacy v. Gors*, 471 N.W.2d 576 (S.D.1991).

Robin Parsons (Robin) was clerking at Mr. G's, a convenience store in Gregory, South Dakota, on April 4, 1991. An unknown customer ordered a $5 "Quick-Pick"[1] ticket for the Lotto*America drawing. The customer refused the ticket, buying instead a $5 ticket entitling him to play five different sets of numbers on the April 6th drawing. Robin placed the rejected $5 ticket on the till for sale to the public.

The refused ticket remained unpurchased prior to the April 6th drawing and was discovered by Ionia Klein (Klein) when she arrived to work on April 7, 1991. Realizing that the ticket held the winning numbers, Klein placed $5 in the store cash box and signed the ticket. On April 9, 1991, the South Dakota Lottery Commission (Commission) verified the ticket and declared Klein to be the holder and owner of the ticket.

On April 11, 1991, the owners of Mr. G's[2] filed suit against Klein alleging that they were the actual holders of the winning ticket and entitled to the prize proceeds. The owners and Klein later entered into a court approved settlement.

In addition on April 25, 1991, Robin filed suit against Klein and the owners of Mr. G's claiming she was entitled to ownership of the ticket since she had mistakenly printed it. Her lawsuit was dismissed and is currently on appeal to this Court.

---

1. A lotto customer may either select the six numbers he wishes to play or he may play a "Quick-Pick" in which the lotto computer generates random numbers for him.

2. Mr. G's is operated by Dacshutz, Inc., a South Dakota corporation. The owners of Dacshutz, Inc. are Michael Dacy, Diane Dacy, Scott M. Anshutz, and Julie A. Anshutz.

On June 7, 1991, Ron Parsons, Jr. (Parsons) filed this suit on behalf of himself and others similarly situated, seeking declaratory relief that would reverse the Commission's decision declaring Klein entitled to the proceeds from the April 6, 1991, Lotto*America drawing. The circuit court entered an order adding George Z. Peterson (Peterson) as a named plaintiff on July 31, 1991, and on January 28, 1992, allowed Parsons and Peterson to amend their complaint. As amended, the complaint again sought declaratory relief under SDCL ch. 21–24 and alleged that none of the defendants presented a valid claim to the proceeds of the Lotto*America drawing. Parsons and Peterson therefore requested that the prize proceeds be returned to the Lotto*America prize pool for redistribution.

Following discovery, Klein and the owners of Mr. G's moved for summary judgment dismissing the complaint. Parsons and Peterson, agreeing that there were no genuine issues of material fact, filed a cross-motion for summary judgment. The circuit court denied Parsons' and Peterson's cross-motion for summary judgment and granted summary judgment to Klein and the owners of Mr. G's on grounds that Parsons and Peterson lacked standing to challenge the Commission's decisions and that sufficient consideration was given for the winning ticket.

Because we hold that Parsons and Peterson did not have standing to challenge the decision of the Commission, we do not reach the issue of consideration.

## ANALYSIS

■ Generally, for a litigant to have standing to bring an action before the court, the litigant must "show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant." *Gladstone, Realtors v. Bellwood,* 441 U.S. 91, 99, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66, 76 (1979).

■ Parsons and Peterson do not argue that they have personally suffered any actual or threatened injury; rather, they allege that they have standing as taxpayers to challenge the distribution of lottery winnings and thus need not suffer a special injury to pursue their action. In South Dakota "a taxpayer need not have a special interest in an action or proceeding nor suffer special injury to himself to entitle him to institute an action to protect public rights." *State v. Kelly,* 65 S.D. 345, 347, 274 N.W. 319, 321 (1937). *See also Torigian v. Saunders,* 77 S.D. 610, 615, 97 N.W.2d 586, 589 (1959); *Lien v. Northwestern Engineering Co.,* 74 S.D. 476, 479, 54 N.W.2d 472, 474 (1952); *White Eagle Oil & Refining Co. v. Gunderson,* 48 S.D. 608, 618, 205 N.W. 614, 618 (1925). Thus, to have standing, Parsons' and Peterson's action must seek to protect a "public right." *State ex rel. Adkins v. Lien,* 9 S.D. 297, 299, 68 N.W. 748, 749 (1896).

This Court has recognized a "public right" where a plaintiff seeks relief from a public official who is compelled by South Dakota law (public duty) or where a plaintiff seeks to protect public funds. *See Danforth v. City of Yankton,* 71 S.D. 406, 413, 25 N.W.2d 50, 54 (1946) (public duty—construction of toll bridge); *Kanaly v. State by and through Janklow,* 368 N.W.2d 819, 827 (S.D.1985) (public funds—changing state university to minimum security prison). Parsons and Peterson do not assert that they are challenging a public duty; rather, Parsons and Peterson allege their lawsuit involves public funds.

Public funds are those funds which have been obtained through taxation and are part of the general funds of the state. The term "public funds" means funds belonging to the state or to the county or political subdivision of the state; more specifically taxes, customs, moneys, etc., raised by the operation of some general law, and appropriated by the government to the discharge of its obligations, or for some public or governmental purpose; and in this sense it applies to the funds of every political division of the state wherein taxes are levied for public purposes. *The term does not apply to special funds, which are collected or voluntarily contributed, for the sole bene-*

*fit of the contributors, and of which the state is merely the custodian.*

Pokorny v. Wayne County, 322 Mich. 10, 33 N.W.2d 641 (1948) (quoting 50 C.J. *Public* § 40 (1930)) (emphasis added). *See also* State v. Igoe, 340 Mo. 1166, 107 S.W.2d 929, 933 (1937); *Allen v. City of Omaha,* 136 Neb. 620, 286 N.W. 916, 919 (1939). *Lottery funds distributed as winnings are not public funds, but rather are special funds collected from lottery players.* This action, thus, does not affect every taxpayer in the state,[3] but rather affects only persons playing the lottery.

■ In this case the lottery ticket was for the April 6, 1991, Lotto*America drawing. Lotto*America is a game operated by the Multi–State Lottery Association.[4] ARSD 48:03:06:02(6). The Commission, per its authority in SDCL 42–7A–21(1) and SDCL 42–7A–4(13), participates in the Lotto*America game. The money for the grand prize comes from a prize pool composed of a percentage of the ticket sales for each drawing period. South Dakota lottery players pay a minimum of $1.00 for a ticket for each drawing.[5] South Dakota citizens, or taxpayers as a whole, are not taxed to create the pool. Because the prize pool is comprised of lottery ticket sales proceeds, the funds paid to Klein are not public funds as the phrase is used in taxpayer actions.

Moreover, the prize pool is comprised of ticket sale proceeds from other states as well as proceeds from South Dakota. Were Klein and the owners of Mr. G's required to return the prize proceeds, the money would revert to the multi-state Lotto*America prize pool for redistribution in a new lottery. SDCL 42–7A–34. The money would not revert to the state's coffers.

In their complaint, Parsons and Peterson in fact admit that should the court strip Klein and the owners of Mr. G's of the prize proceeds, the money would return to the prize pool. Because the prize proceeds do not return to the general fund of the state, but instead revert to a multi-state prize pool, they cannot be viewed as public funds. Parsons and Peterson lack standing as taxpayers to pursue this action.

■ In addition, in taxpayer actions, the plaintiffs are required to ask the state attorney general to bring an action on behalf of the public or show why such request would be futile. *Lien,* 74 S.D. at 480, 54 N.W.2d at 474; *White Eagle,* 48 S.D. at 618, 205 N.W. at 618. A taxpayer is not required to seek the attorney general's representation if the attorney is a party to the suit. *Id.* Such is not the case here. Neither is the attorney general a party to this suit nor was his representation sought by Parsons and Peterson. Thus, this suit is not a taxpayer action and was not properly pursued as such.

■ Parsons and Peterson do not have standing as taxpayers to challenge the ownership of the winning ticket nor are they real parties in interest with standing to pursue this action. Parsons and Peterson do not seek to recover the prize proceeds for themselves, but rather seek to have the prize proceeds returned to the Lotto*America prize pool. Neither Parsons nor Peterson claim to have any interest in the winning lottery ticket at issue. They want to have the prize proceeds transferred back to the prize pool to provide them with a chance to win the proceeds. A mere expectancy does not give rise to a property interest. *See e.g.,* SDCL

---

3. Cases of public right involve every taxpayer. [T]his proceeding was instituted to procure the enforcement of a public right,—a matter of general interest to *every* voter and taxpayer of Roberts County, *each one of whom,* as a party beneficially interested, is entitled to compel by mandamus the performance of such public duty, specially enjoined upon the defendants as a board of county commissioners.
Adkins, 9 S.D. at 299, 68 N.W. at 749. (emphasis added).

4. Numerous states and the District of Columbia are members of the Multi–State Lottery Association and jointly operate the game of Lotto*America.

5. The minimum play of $1.00 entitles a player to two sets of six numbers for one drawing. A player may pay up to $5.00 and select 10 sets of numbers per play card.

43–3–6 ("A mere possibility, such as the expectancy of an heir apparent, is not deemed an interest of any kind.")

■ Furthermore, as the parties agreed at the trial level, a lottery ticket is a contract between the lottery and each player. *Van Gulik v. Resource D. Council for Alaska*, 695 P.2d 1071, 1073 (Alaska 1985); *DePasquale v. Ogden Suffolk Downs, Inc.*, 29 Mass.App.Ct. 658, 564 N.E.2d 584, 586 (1990); *In re D'Amico Estate*, 435 Mich. 551, 460 N.W.2d 198, 203 (1990); *Valente v. Rhode Island Lottery*, 544 A.2d 586, 589 (R.I.1988). Parsons and Peterson were not parties to the contract because they held no alleged ownership in the disputed winning ticket. The parties with claims to ownership, Klein and the owners of Mr. G's, have resolved their dispute by a court approved settlement. Parsons and Peterson, as third parties, cannot tell Klein and the owners of Mr. G's that they inappropriately ended their lawsuit, nor force that viewpoint upon the parties by pursuit of another action. Parsons and Peterson are not real parties in interest with regard to the winning ticket.

Parsons and Peterson's action does not qualify as a taxpayer action nor are Parsons and Peterson real parties in interest.

The judgment of the circuit court is affirmed.

HENDERSON, J., concurs.

MILLER, C.J., concurs specially.

WUEST and SABERS, JJ., concur in result.

HURD, Circuit Judge, for AMUNDSON, J., disqualified.

MILLER, Chief Justice (concurring specially).

I respectfully suggest the writers concurring in result miss the point. The money contested by Parsons is the *prize proceeds, it is not the State's share of money collected* by Lotto*America retailers. Indeed, the State's share has already been remitted to a public fund. There is absolutely no public right to even one cent of the *prize proceeds.* Public interest in the distribution of the prize money does not make the prize money into public funds. It is not a public concern and does not convert public rights or funds. This is a private matter between the Lottery Commission and its declared winner.

SABERS, Justice (concurring in result).

I concur in the result of an affirmance but I do so on the merits rather than on procedure.

### 1. *Procedure or Standing.*

I disagree with Circuit Judge Hurd's opinion on standing because this is a *public* matter. These funds are sufficiently *public* and Plaintiffs' right to challenge the disposition of same was sufficiently *public.* As this court stated in 1937, "[i]t has become the settled law of this state that a taxpayer need not have a special interest in an action or proceedings nor suffer special injury to himself to entitle him to institute an action to protect public rights." *State ex rel. Jensen v. Kelly*, 65 S.D. 345, 347, 274 N.W. 319, 321 (1937) (citations omitted). *See generally Kanaly v. State*, 368 N.W.2d 819 (S.D.1985) (ownership, special interest, or injury is not a prerequisite to litigate a case involving public funds).[1]

### 2. *Consideration.*

According to Susan Walker's Affidavit, when a lottery ticket is issued, the price of

---

1. *See also Farris v. Munro*, 99 Wash.2d 326, 662 P.2d 821 (1983) (where issue is a matter of continuing and substantial interest and presents a question of public nature likely to recur, and it is desirable to provide authority for future guidance, court should reach substantive issue presented although petitioner lacked standing to challenge constitutionality of the State Lottery Act) (standing questions in suits not involving taxpayers should be analyzed in terms of the public interests presented). "Where a controversy is of serious public importance and immediately affects substantial segments of the population and its outcome will have a direct bearing on the commerce, finance, labor, industry or agriculture generally, questions of standing to maintain an action should be given less rigid and more liberal answer." *Id.* 662 P.2d at 824 (citations omitted).

the ticket is automatically charged to the retailer's account. If a ticket is produced by a retailer as a result of anything other than terminal or computer error, such as clerk error, payment for the ticket is the financial responsibility of the retailer and he does not receive a refund or adjustment.

"It is elementary that a promise to pay constitutes consideration." *State v. Murphy*, 74 S.D. 21, 23, 48 N.W.2d 225, 226 (1951). Therefore, Plaintiffs lose on the merits because Mr. G's was immediately liable for the $5.00, which exposed them to the risk of losing same and provided the consideration needed.[2]

WUEST, J., joins this special writing.

---

2. SDCL 53–6–3. *Instrument as evidence of consideration.* A written instrument is presumptive evidence of a consideration.

SDCL 53–6–1. *Good consideration, acts constituting.* Any benefit conferred or agreed to be conferred upon the promiser by any other person to which the promiser is not lawfully entitled, or any prejudice suffered or agreed to be suffered by such person, other than such as he is at the time of consent lawfully bound to suffer as an inducement to the promiser, is good consideration for a promise.