1999 SD 159

**SOUTH DAKOTA SUBSEQUENT INJURY FUND, Appellant,**

v.

**HOMESTAKE MINING COMPANY, Appellee.**

No. 20813.

Supreme Court of South Dakota.

Considered on Briefs Sept. 13, 1999.

Decided Dec. 22, 1999.

26A–60(6). As such it is waived. *State v. Pellegrino,* 1998 SD 39, ¶ 22, 577 N.W.2d 590, 599.

Mark Barnett, Attorney General, Richard A. Engels, Special Assistant Attorney General, Pierre, South Dakota, for appellant.

Brad P. Gordon of Fuller, Tellinghuisen, Gordon and Percy, Spearfish, for appellee.

CALDWELL, Circuit Judge.

[¶ 1.] The South Dakota Subsequent Injury Fund (SIF) appeals the order of the trial court affirming an order of the Department of Labor (Department) requiring SIF to pay Homestake Mining Company (Homestake) prejudgment interest on Homestake's reimbursement claim. We affirm.

## FACTS

[¶ 2.] On September 11, 1996, Homestake Mining Company filed a claim with the South Dakota Division of Insurance (Division) for reimbursement from the South Dakota Subsequent Injury Fund.

The claim was denied by the Division on July 8, 1997. The Division concluded that the preexisting condition suffered by Homestake's employee was not of a disabling quality and there had been no subsequent injury under SDCL 62–4–34. Homestake filed a petition for hearing with the South Dakota Department of Labor in accordance with SDCL 62–4–34.2 on July 14, 1997.

[¶ 3.] The Department reversed the Division's denial and granted Homestake's claim for reimbursement on March 27, 1998. On April 3, 1998, Homestake filed a motion for prejudgment interest with respect to this decision. On May 14, 1998 after considering written arguments from the parties, the Department awarded prejudgment interest to Homestake pursuant to SDCL 62–4–34.5 and 21–1–11. The rate of interest was set at twelve percent on the principal of $212,102.28 in accordance with SDCL 54–3–4 for the period from May 1, 1997, the filing date of the completed claim, through the March 27, 1998 judgment.

[¶ 4.] An appeal was filed in trial court on both the order of reimbursement and the award of prejudgment interest. On October 23, 1998, the court affirmed the Department's decision that Homestake was entitled to reimbursement and also affirmed the order for SIF to pay Homestake prejudgment interest on the reimbursement amount under SDCL 21–1–11.

[¶ 5.] SIF filed a notice of appeal ·with this Court citing four issues for appeal based on the trial court's decision. However, in light of the recent decision by this Court in *South Dakota Subsequent Injury Fund v. Casualty Reciprocal Exchange and Dakota Truck Underwriters,* 1999 SD 2, 589 N.W.2d 206, SIF agrees that Homestake was entitled to the reimbursement under SDCL 62–4–34. SIF paid Homestake's underlying reimbursement claim on January 27, 1999 and is no longer appealing those issues.

[¶ 6.] Thus, the only issue left to be decided in this case is whether the Department and the trial court erred in granting Homestake's petition for prejudgment interest.

## STANDARD OF REVIEW

[¶ 7.] This case involves an appeal from an administrative ruling by the Department of Labor. When analyzing an administrative appeal, we must initially determine whether "the holding ... involves a finding of fact or conclusion of law." *Appeal of Schramm*, 414 N.W.2d 31, 33 (S.D.1987). Questions of law, such as statutory interpretation, are reviewed by this Court de novo. *Casualty Reciprocal Exchange*, 1999 SD 2, ¶ 12, 589 N.W.2d at 208 (citing *Dahn v. Trownsell*, 1998 SD 36, ¶ 14, 576 N.W.2d 535, 539). No deference is given to conclusions of law by the trial court or the agency. *Schramm*, 414 N.W.2d at 33.

[¶ 8.] The question of prejudgment interest involved in this case is clearly a question of law requiring interpretation of statutes. Thus, this Court reviews the issue de novo and the decisions of both the Department and the trial court are fully reviewable.

## ANALYSIS AND DECISION

[¶ 9.] The purpose of prejudgment interest is " 'to do justice to one who has suffered a loss at the hands of another person.' " *Honomichl v. Modlin*, 477 N.W.2d 599, 601 (S.D.1991)(quoting *Jensen Ranch, Inc. v. Marsden*, 440 N.W.2d 762, 767 (S.D.1989); *S.D. Bldg. Auth. v. Geiger–Berger Assoc.*, 414 N.W.2d 15, 19 (S.D. 1987); *Amert v. Ziebarth Const. Co.*, 400 N.W.2d 888, 890 (S.D.1987)). Prejudgment interest seeks to "compensate an injured party for [the] wrongful detention of money owed." *S.D. Bldg. Auth.*, 414 N.W.2d at 19 (citing *Bunkers v. Guernsey*, 41 S.D. 381, 170 N.W. 632 (1919)). " 'The true principle, which is based on the sense of justice in the business community and our statute, is that he who retains money

which he ought to pay another should be charged interest upon it.' " *Honomichl*, 477 N.W.2d at 601 (quoting *Arcon Const. Co. v. S.D. Cement Plant*, 405 N.W.2d 45, 47 (S.D.1987); *S.D. Bldg. Auth.*, 414 N.W.2d at 19; *Gearhart v. Hyde*, 39 S.D. 273, 275, 164 N.W. 58, 59 (1917)).

[¶ 10.] In this case, SIF retained money that Homestake was entitled to receive. SIF claimed Homestake had no legal right to receive the reimbursement it requested. However, it was determined by this Court that SIF was wrong in that denial and in its interpretation of SDCL 62–4–34. *See Casualty Reciprocal Exchange, supra*. While SIF did pay Homestake almost immediately upon learning that the interpretation it was giving to SDCL 62–4–34 was incorrect, that does not change the fact that SIF did wrongfully retain Homestake's money for a period of approximately two years. The only requirement Homestake had to meet under South Dakota law was that it be entitled to damages. In this case, SIF caused Homestake detriment or loss by unlawfully withholding money it was entitled to by statute.

[¶ 11.] SIF argues that prejudgment interest should not be paid to Homestake because the money in the fund is public to the extent that the legislature authorized its formation and collected the money to place within it. However, SIF admits that fund monies would not be considered public for purposes of taxpayer actions since the fund does not contain tax money. SIF, instead, argues that the fact that the fund was created through legislation makes it public. SIF further claims that the money in the fund amounts to appropriated money because SDCL 62–4–34.5 provides that "[a]ll claim reimbursements ... are continuously appropriated." Thus, SIF claims, the funds cannot be spent without specific legislative enactment, making this grant of prejudgment interest unauthorized and illegal.

[¶ 12.] However, according to South Dakota law, the fund does not meet the definition of either public funds or appropriated funds. "Public funds are those funds which have been obtained through taxation and are part of the general funds of the state." *Parsons v. S.D. Lottery Comm'n*, 504 N.W.2d 593, 595 (S.D.1993). *Parsons* further states that

> The term 'public funds' means funds belonging to the state or to the county or political subdivision of the state; more specifically **taxes, customs, moneys, etc., raised by the operation of some general law, and appropriated by the government to the discharge of its obligations, or for some public or governmental purpose**; and in this sense it applies to the funds of every political division of the state wherein taxes are levied for public purposes. **The term does not apply to special funds, which are collected or voluntarily contributed, for the sole benefit of the contributors, and of which the state is merely the custodian.**

*Id.* at 595–96 (first emphasis added) (quoting *Pokorny v. Wayne County*, 322 Mich. 10, 33 N.W.2d 641, 642 (1948) (quoting 50 CJ *Public* § 40 (1930) and citing *State v. Igoe*, 340 Mo. 1166, 107 S.W.2d 929, 933 (1937); *Allen v. City of Omaha*, 136 Neb. 620, 286 N.W. 916, 919 (1939))). Appropriated funds are defined in SDCL 4–7–1(1) as "an authorization by the Legislature to a budget unit to expend, from **public funds**, a sum of money not in excess of the sum specified, for the purposes specified in the authorization and under the procedure described in this chapter." (emphasis added).

[¶ 13.] The SIF monies are not taxpayer funds and are not public funds. Since the money in the fund is not considered public funds under South Dakota law, it is also not appropriated money which by definition arises from public funds. SDCL 4–7–1(1). The money in the SIF is a special fund as defined in *Parsons*. It is held by the state merely as custodian. The money within the fund is held solely for the benefit of contributors like Homestake.

[¶ 14.] The SIF was created under South Dakota worker's compensation law for the purpose of encouraging employers to "hire or retain disabled or handicapped workers." *Sioux Falls School District v. South Dakota Subsequent Injury Fund*, 504 N.W.2d 107, 107 (S.D.1993); *Oesterreich v. Canton–Inwood Hospital*, 511 N.W.2d 824, 827 (S.D.1994); *Casualty Reciprocal Exchange*, 1999 SD 2, at ¶ 14, 589 N.W.2d at 206; *See generally* 5 Larson, Worker's Compensation Law, § 91 (1999). Those participating in the fund are entitled to be reimbursed from SIF for that portion of the disability sustained by the previously injured employee that occurred because of or was aggravated by the existence of a previous injury or physical condition. SDCL 62–4–34. The money within the fund comes from assessments made by the South Dakota Division of Insurance to worker's compensation insurance carriers and self-insured employers. SDCL 62–4–35.

[¶ 15.] There is nothing within SDCL 62–4–34, et al., that prohibits the payment of prejudgment interest. There is also precedent that grants the right of an award of prejudgment interest in cases involving worker's compensation claims. *See Johnson v. Skelly Oil Co.*, 359 N.W.2d 130, 133 (S.D.1984) ("The true principle, which is based on the sense of justice in the business community and on our statute, is that he who retains money which he ought to pay to another should be charged interest upon it."). Thus, when this claim was filed, there was nothing to prohibit the award of prejudgment interest on this claim.

[¶ 16.] The final argument made by SIF arises from the legislature's enactment of SDCL 62–4–34.7. This statute purports to end all claims made upon the fund as of June 30, 1999, and provides in relevant part that "[a]ny claim in matters being litigated concerning the subsequent injury fund is not eligible for interest or

costs." SIF argues that we should honor this amendment as a clarification of existing law rather than a change of the law and deny Homestake interest on its claim.

[¶ 17.] While it is proper for the Court to take the subsequent action of the legislature into consideration, "it is well established under South Dakota law that the legislative interpretation of a statute through the adoption of a subsequent amendment is not binding on this court...." *Hot Springs Ind. School Dist. v. Fall River Landowners Assoc.*, 262 N.W.2d 33, 38 (S.D.1978). "[I]f the court does consider a subsequent amendment, the court must decide whether the purpose of the amendment was for clarification or whether the amendment altered the law." *Id.* at 39 (citing *Olson v. Pulaski Common School Dist.*, 77 S.D. 416, 92 N.W.2d 678 (1958)). The Court has broad discretion in determining the extent to which it must look at the subsequent amendment. *Id.* The Court is not bound by **any** subsequent legislative acts. *Id.*

[¶ 18.] In this case, while not bound by the subsequent legislative action, the Court can consider the circumstances and purpose under which the action was taken to determine whether this subsequent legislative enactment is a clarification or a change of the law. Thus, we must look at the time and circumstances surrounding the enactment to determine the intent with which it was made. *Id.* As pointed out by SIF in its reply brief, this amendment was passed "in the wake of several adverse lower court decisions awarding interest, one of which is the instant case." However, where SIF claims the language of the statute shows an intent to clarify the legislative intentions of SDCL 62–4–34 and 62–4–34.5, this Court believes the language shows an attempt to **change** the law in the wake of unfavorable decisions.

[¶ 19.] The language used in SDCL 62–4–34.7 does not show any intent to clarify; nor does it use the type of language that would imply clarification. Rather, it attempts to **forbid** the payment of interest

from the fund **only on claims presently in litigation**, not on all claims under that section or the fund. Under the new enactment, a claim could be submitted prior to June 30, 1999 and awarded interest despite this enactment. After all, such a claim could be litigated well after the SIF is repealed, and interest on such a claim would not be forbidden because the claim would not be in litigation at the appropriate time to be covered under the new statute. Thus, if this subsequent amendment is purporting to clarify whether prejudgment interest is allowed under this section, it is not broad enough to actually do this with regard to **all** possible claims against SIF. Instead, it attempts to prohibit prejudgment interest cases currently in litigation and that is inconsistent with the purported intent of the new statute, according to SIF. There is nothing to suggest an attempt to clarify the various statutes surrounding the fund at the time this claim was filed. Instead, it is clearly an attempt to change the law and deny employers, whose money was wrongfully and unlawfully withheld from them, the right to recover prejudgment interest for their damages.

## CONCLUSION

[¶ 20.] It is a fundamental principle of our law that one who causes detriment to another by unlawful act or omission should have to pay damages in the amount withheld and interest for the time the use of the money was denied. SIF wrongfully and unlawfully withheld money from Homestake when it refused to pay the reimbursement request it submitted. By wrongfully withholding Homestake's money, the SIF caused Homestake a detriment because it was denied the use of that money. There is nothing in our law that prevents the payment of prejudgment interest on this claim and the subsequent legislative enactment is not binding on this Court since it is not an attempt to clarify the original legislative intent.

[¶ 21.] The judgment of the trial court is affirmed.

[¶ 22.] MILLER, Chief Justice, and SABERS, KONENKAMP, and GILBERTSON, Justices, concur.

[¶ 23.] CALDWELL, Circuit Judge, for AMUNDSON, Justice, disqualified.